"ORIGINAL"

FILED

JUL 24 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Mr. Allison Barton Rice
2  700 Lavaca St. #1400-90978
   Austin, TX  78701
3  PH: (415) 579-8208
   allisonbartonrice@mac.com
4
   Plaintiff, in propria persona

5        UNITED STATES DISTRICT COURT

6  NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

7

8  ALLISON BARTON RICE, an individual,     CASE NO.: CV 19 - 4250   LB

9              Plaintiff,
                                           COMPLAINT FOR VIOLATIONS
10                                         OF:
   v.
11                                         1.  FAIR HOUSING ACT BY
12 THE CITY AND COUNTY OF SAN                  DISCRIMINATION ON BASIS OF
   FRANCISCO; LONDON BREED, MAYOR              DISABILITY;
13 OF THE CITY OF SAN FRANCISCO;
   KATE HARTLEY, DIRECTOR OF THE           2.  TITLE II OF THE AMERICANS
14 SAN FRANCISCO MAYOR'S OFFICE OF             WITH DISABILITIES ACT;
   HOUSING AND COMMUNITY
15 DEVELOPMENT; MARIA BENJAMIN,            3.  ORDINARY AND GROSS
   DIRECTOR OF HOMEOWNERSHIP &                 NEGLIGENCE;
16 BELOW MARKET RATE PROGRAMS
   SAN FRANCISCO MAYOR'S OFFICE OF         4.  FRAUD, CONSPIRACY AGAINST
17 HOUSING AND COMMUNITY                       RIGHTS, DEPRIVATION OF
   DEVELOPMENT; CISSY YIN,                     RIGHTS UNDER COLOR OF LAW,
18 HOMEOWNERSHIP & BELOW MARKET                ABUSE OF PUBLIC AUTHORITY;
   RATE PROGRAMS COMPLIANCE
19 MANAGER SAN FRANCISCO MAYOR'S         5.  ELDER ABUSE AND DEPENDENT
   OFFICE OF HOUSING AND                       ADULT CIVIL PROTECTION ACT.
20 COMMUNITY DEVELOPMENT; DENNIS
   HERRERA, SAN FRANCISCO CITY
21 ATTORNEY; KEITH NAGAYAMA, SAN
   FRANCISCO CITY DEPUTY ATTORNEY
22 and DOES 1 through 50,

23           Defendants.

24 ///

25 ///

26 ///

27 ///

28 ///

Page 1

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1

## INTRODUCTION

2     1.    This is an action for injunctive and equitable relief, as well as monetary

3 damages, to redress THE CITY AND COUNTY OF SAN FRANCISCO; LONDON BREED,

4 INDIVIDUALLY AND IN HER CAPACITY AS MAYOR OF THE CITY OF SAN

5 FRANCISCO; KATE HARTLEY, INDIVIDUALLY AND IN HER CAPACITY AS

6 DIRECTOR OF THE SAN FRANCISCO MAYOR'S OFFICE OF HOUSING AND

7 COMMUNITY DEVELOPMENT; MARIA BENJAMIN, INDIVIDUALLY AND IN HER

8 CAPACITY AS DIRECTOR OF HOMEOWNERSHIP & BELOW MARKET RATE

9 PROGRAMS SAN FRANCISCO MAYOR'S OFFICE OF HOUSING AND COMMUNITY

10 DEVELOPMENT; CISSY YIN, INDIVIDUALLY AND IN HER CAPACITY AS

11 HOMEOWNERSHIP & BELOW MARKET RATE PROGRAMS COMPLIANCE MANAGER

12 SAN FRANCISCO MAYOR'S OFFICE OF HOUSING AND COMMUNITY

13 DEVELOPMENT; DENNIS HERRERA, INDIVIDUALLY AND IN HIS CAPACITY AS SAN

14 FRANCISCO CITY ATTORNEY; KEITH NAGAYAMA, INDIVIDUALLY AND IN HIS

15 CAPACITY AS SAN FRANCISCO CITY DEPUTY ATTORNEY; and DOES 1 through 50

16 (hereinafter collectively "Defendants") unlawful practices against Plaintiff ALLISON BARTON

17 RICE (hereinafter "Plaintiff" or "Plaintiff Rice"), including Defendants' unlawful

18 discrimination against Plaintiff Rice in light of his disability; refusal to provide a necessary and

19 reasonable disability related policy accommodation; and interference in Plaintiff's exercise of

20 his rights in violation of: Title VIII of the Civil Rights Act of 1968, as amended by the Fair

21 Housing Amendments Act of 1988 ("the Fair Housing Act"); Title II Of The Americans With

22 Disabilities Act of 1990 ("ADA"); for Ordinary and Gross Negligence; for Fraud, Conspiracy

23 Against Rights, Deprivation of Rights Under Color of Law, Abuse of Public Authority; and for

24 Abuse of a Dependent Adult.

25 ///

26 ///

27 ///

28 ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1     2.       Defendants conduct was knowing, malicious, willful, wanton, not a good faith

2 performance of official duties, and in reckless disregard for Plaintiff Rice, which has caused and

3 continues to cause Plaintiff Rice to suffer substantial economic and non-economic damages

4 including, but not limited to, severe and intense mental anguish, emotional distress, debilitating

5 anxieties, humiliation, and stress related physical symptoms.

6     3.       Plaintiff alleges that Defendants engaged in:

7            (A).     Discriminatory practices, services, and/or activities by way of refusal to

8 make a necessary and reasonable disability related policy accommodation when such

9 accommodation was necessary to afford Plaintiff Rice equal opportunity to enjoy his dwelling;

10 and unlawful retaliation in the form of coercion, intimidation, threat, and interference in

11 Plaintiff's enjoyment of his dwelling on account of the exercise or enjoyment of his protected

12 rights in violation of the Fair Housing Act, Sections 42 U.S.C. §§ 3604(f)(3)(B), 3604(f)(2)(A)

13 and 3617;

14            (B).     Discriminatory practices, services, and/or activities by way of

15 misrepresentations, suppressions, concealments, and/or deceptions in violation of the ADA,

16 Section 42 U.S.C. § 12132;

17            (C).     A breach and failure to conform to the duty of reasonable care in

18 violation of California Civil Code, Sections 1708 and 1714(a);

19            (D).     A breach and failure to conform to an inherent duty to provide full

20 disclosure as was appropriate in this case;

21            (E).     Intentional and/or reckless treatment and/or behavior with respect to, but

22 not limited to, Plaintiff Rice and his health, well-being, disabilities, medical condition, rights,

23 and veteran status that was so severe, extensive, and complete that it was *extreme and*

24 *outrageous.*

25 ///

26 ///

27 ///

28 ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1           (F).    Fraud, Conspiracy Against Rights, Deprivation of Rights Under Color of

2    Law, and Abuse of Public Authority by way of misrepresentations, suppressions, concealments,

3    and/or deceptions in writings and verbally (in the case of conspiracy, by two (2) or more

4    Defendants) pursuant to Sections 18 U.S.C. §§ 241, 242, 1001 and 1018, and California Civil

5    Code, Sections 1709, 1710, 1572, and 1573; and California Government Code, Section

6    53243.4(a); and,

7           (G).    Abuse of a dependent adult by way of neglect and/or other treatment

8    resulting in severe and intense mental suffering, distress, anguish, and humiliation pursuant to

9    California Welfare and Institutions Code, Sections 15610.53, 15610.57, and 15656(b).

10      4.    Plaintiff Rice filed a complaint of discrimination on the basis of disability and

11   failure to make a necessary and reasonable disability related policy accommodation in violation

12   of the Fair Housing Act with the United States Department of Housing and Urban Development

13   ("HUD").

14      5.    Plaintiff Rice elects to have the claims stated in the HUD complaint determined

15   in a civil action, per his rights under the Fair Housing Act, 42 U.S.C. § 3613(a).

16      6.    Plaintiff Rice therefore brings this action for injunctive relief and monetary

17   damages pursuant to the Fair Housing Act, 42 U.S.C. § 3613(a).

18          **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

19      7.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343

20   and/or 42 U.S.C. § 3613(a), as this action involves federal questions regarding the deprivation

21   of Plaintiff's civil rights under Title VII, Section 1981 and/or Title VIII, Section 3613. The Court

22   has supplemental jurisdiction over Plaintiff's related claims arising under state and local law

23   pursuant to 28 U.S.C. § 1367(a).

24      8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and/or 42 U.S.C.

25   § 3613(a), and this lawsuit should be assigned to the San Francisco Division of this Court

26   because a substantial part of the events or omissions giving rise to this action, including the

27   unlawful housing practices alleged herein, occurred in the City and County of San Francisco.

28   ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

**PARTIES**

9.     For all material times herein, Plaintiff Rice was a resident of San Francisco, California.

10.    For all material times herein, Plaintiff Rice was the owner of a Below Market Rate ("BMR") condominium ("the Property"), which was his home for 14+ years.  Prior to that, Plaintiff Rice has never lived in one residence for more than four (4) years, and typically for not more than two (2) years.   And, in his mid-thirties, he suffered a three (3) year period of homelessness.  Furthermore, Plaintiff Rice has never been married and has no children.

11.    Plaintiff Rice is a Vietnam Era veteran.

12.    Plaintiff Rice has been diagnosed with mental health disabilities which stem from injury or disease suffered from service as a Hospital Corpsman in the United States Navy, inclusive of service with the United States Marines, and for which Plaintiff Rice has been deemed totally and permanently disabled pursuant to public laws administered by the United States Department of Veterans Affairs, as shown in **Exhibit "A"** and incorporated by reference herein.

13.    Plaintiff's disabilities substantially impair major life activities including, concentrating, thinking, communicating, working, emotional adjustment, interpersonal and social skills & abilities.

14.    For all material times herein, Plaintiff Rice has suffered from disabilities pursuant to the Fair Housing Act as set forth in Section 42 U.S.C. § 3602(h).

15.    For all material times herein, Plaintiff Rice has suffered from disabilities pursuant to the Americans with Disabilities Act as set forth in Section 42 U.S.C. § 12102.

16.    For all material times herein, Plaintiff Rice has suffered from disabilities and a medical condition pursuant to the California Civil Code as set forth in Section 51(e)(1) and (3).

///

///

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

17.     For all material times herein, Plaintiff Rice has suffered mental limitations but was competent to handle normal activities sufficient to live independently.    However, and especially in this convoluted and complex case that found Plaintiff Rice solely faced against public authorities, Plaintiff's mental limitations restrict his ability to protect his rights pursuant to the California Welfare and Institutions Code as set forth in Section 15610.23(a)

18.     For all material times herein, Defendant CITY AND COUNTY OF SAN FRANCISCO was a municipal corporation, duly organized and existing under its charter and the laws of the State of California.    Under its authority, defendant City and County of San Francisco operates the San Francisco Mayor's Office of Housing and Community Development ("MOHCD") and committed violations of the Fair Housing Act, the Americans with Disabilities Act, Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

19.     For all material times herein, Defendant LONDON BREED, MAYOR OF THE CITY OF SAN FRANCISCO, was the Mayor or the Acting Mayor of the City of San Francisco and directed and controlled the MOHCD and committed violations of the Fair Housing Act, the Americans with Disabilities Act, Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

20.     For all material times herein, Defendant KATE HARTLEY, DIRECTOR OF THE SAN FRANCISCO MAYOR'S OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, was the Director or Interim Director of the MOHCD and directed and controlled the MOHCD and committed violations of the Fair Housing Act, the Americans with Disabilities Act, Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

21.     For all material times herein, Defendant MARIA BENJAMIN, DIRECTOR OF HOMEOWNERSHIP & BELOW MARKET RATE PROGRAMS SAN FRANCISCO MAYOR'S OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, was the Director of Homeownership & Below Market Rate Programs of the MOHCD and directed and controlled the Homeownership & Below Market Rate Programs of the MOHCD and committed violations of the Fair Housing Act, the Americans with Disabilities Act, Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1       22.    For all material times herein, CISSY YIN, HOMEOWNERSHIP & BELOW

2 MARKET RATE PROGRAMS COMPLIANCE MANAGER SAN FRANCISCO MAYOR'S

3 OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, was the Homeownership &

4 Below Market Rate Programs Compliance Manager of the MOHCD and directed and controlled

5 the Homeownership & Below Market Rate Programs Compliance Department of the MOHCD

6 and committed violations of the Fair Housing Act, the Americans with Disabilities Act,

7 Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

8       23.    For all material times herein, Defendant DENNIS HERRERA, SAN

9 FRANCISCO CITY ATTORNEY, was the San Francisco City Attorney and directed and

10 controlled the San Francisco City Attorney's Office which provided legal guidance and

11 direction to the MOHCD and committed violations of the Fair Housing Act, the Americans with

12 Disabilities Act, Plaintiff's Civil Rights, and the California Code which harmed Plaintiff Rice.

13       24.    For all material times herein, Defendant KEITH NAGAYAMA, SAN

14 FRANCISCO CITY DEPUTY ATTORNEY, was the San Francisco City Deputy Attorney and

15 provided legal guidance and direction to the MOHCD and committed violations of the Fair

16 Housing Act, the Americans with Disabilities Act, Plaintiff's Civil Rights, and the California

17 Code which harmed Plaintiff Rice.

18                                 **FACTUAL ALLEGATIONS**

19                                      **I. BACKGROUND**

20       25.    On October 25th 2004, Plaintiff Rice acquired title to the Property which he

21 obtained via a 'Limited Equity Homeownership Program' ("LEHP") from the San Francisco

22 Redevelopment Agency ("SFRA") (SFRA was the predecessor to the MOHCD, and both are

23 public entities as defined in the ADA in Section 42 U.S.C. § 12131(1)(B), and in the California

24 Government Code in Section 811.2).

25 ///

26 ///

27 ///

28 ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

26.     Plaintiff Rice entered into the LEHP DECLARATION OF RESALE RESTRICTIONS AND OPTION TO PURCHASE AGREEMENT ("the Agreement") with the Redevelopment Agency of the City and County of San Francisco ("Agency"). The Agreement is identified as Instrument No. DOC-2004-H838555-00 recorded at the County of San Francisco Recorder's Office on October 25th 2004, as shown in **Exhibit "B"** and incorporated by reference herein.

27.     In 2007, Plaintiff Rice became increasingly interested in having a roommate out of concern for the emotional states he experiences as part of his diagnosed disability (i.e. isolation & loneliness).  The Property was a one (1) bedroom unit and required modification to create two (2) rooms out of the single large bedroom and, thus, make the Property suitable for two (2) people to live in as roommates.

28.     On or about August 2nd 2007, via a phone call, Plaintiff Rice requested permission from Ms. Edith Horner ("Ms. Horner") to modify the Property, Ms. Horner directed Plaintiff to her superior, Mr. David Sobel ("Mr. Sobel"), both were employees of the SFRA.

29.     On or about August 2nd 2007, via a phone call, Plaintiff Rice requested permission from Mr. Sobel to modify the Property.  Mr. Sobel verbally granted permission for Plaintiff Rice to modify the Property if Plaintiff Rice was willing to return the Property back to its original design if need be, when and if Plaintiff Rice were to sell and move elsewhere.  In referenced phone call, Mr. Sobel subsequently requested Plaintiff Rice put his request and such agreement in an email and send it to Ms. Horner and himself (Mr. Sobel).

30.     At 6:33 PM on August 2nd 2007, Plaintiff Rice sent an email to Ms. Horner and Mr. Sobel stating ",... *if need be, I could and would be willing to make it conditional that I return the space back to its original design if and when I move to some place else.*".  Plaintiff Rice further stated "*FYI, I am a 53 year old retired disabled veteran, without much money, and with no particular elements on the horizon that would indicate that I would be moving or making much of any changes before I die.*", as shown in **Exhibit "C"** and incorporated by reference herein.

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

31.     In the latter part of 2008, via a phone call, Plaintiff Rice made his first express request for accommodations to Ms. Horner of the SFRA.   During that phone discussion, Plaintiff Rice asked for permission to have a roommate (i.e. a "rent-paying" individual); and, whether or not he could have a waiver to be away from the Property for more than two months per year. In that phone discussion, Ms. Horner approved both requests verbally over the phone.

32.     In or around July 2009, Plaintiff Rice completed modifying the Property in full compliance with all San Francisco Building Department requirements (including licensed architectural drawings, licensed electrical work, and signed off inspections by inspectors from the San Francisco Building Department) as well as all HOA documentation and approval requirements.

33.     In or around September 2009, Plaintiff Rice acquired his first roommate at the Property ("Plaintiff's Roommate").

34.     Throughout and at all times of Plaintiff's ownership of the Property, including the ordeal which brings forth this complaint, Plaintiff Rice was completely honest, truthful, transparent, and put forth good and best effort to obey and be in compliance of any and all rules, regulations, laws, and especially the specificities of the Agreement.  Furthermore, Plaintiff Rice never expected or had any wish for this ordeal to occur.

## II. COMPLIANCE ISSUE

35.     In mid 2015 Plaintiff Rice became interested in traveling to Europe and was conscientious of his need to be in compliance with respect to the Agreement, specifically being away from the Property for more than two months per year.  Prior to contacting the MOHCD, at 10:15 AM on August 4th 2015, Plaintiff Rice contacted Ms. Horner via email to clarify what they discussed in the latter part of 2008.  At 11:03 AM on August 4th 2015, via email reply, Ms. Horner responded by directing Plaintiff to Mr. Garrett Smith ("Mr. Smith") and Ms. Gwen Sebay of the MOHCD, whom she had copied on her emailed response, as shown in **Exhibit "D"** and incorporated by reference herein.

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

36.     At 12:11 PM on August 4th 2015, Plaintiff Rice received an email from Mr. Smith, in which Mr. Smith states *"Mr. Rice, please direct any questions you have concerning 200 Brannan Street."* [sic].   At 5:08 PM on August 4th 2015, Plaintiff Rice wrote to Mr. Smith via email setting forth his previously obtained permission from Ms. Horner to be away from the Property for more than two months per year and requested the same from Mr. Smith, and for Mr. Smith to *"Please advise."*.  (See **Exhibit "D"**)

37.     Plaintiff Rice never received a response from Mr. Smith or anyone else in regard to his request as set forth above in paragraph 36.

38.     Additionally, Plaintiff's 5:08 PM August 4th 2015 email to Mr. Smith contains the following statement from Plaintiff Rice *"FYI, I am a 61 y/o 100 percent service connected disabled Viet-Nam Era veteran."*. [sic] (See **Exhibit "D"**)

39.     In another effort to ensure his compliance, later in August or early September 2015, Plaintiff Rice called the phone number provided in Mr. Smith's email, received Mr. Smith's voicemail, left a message about his earlier email and its subject matter, and requested Mr. Smith to call him back.

40.     Plaintiff Rice never received a response in regard to his request as set forth above in paragraph 39.

41.     With respect to having a roommate, Plaintiff Rice was not cognizant of the "written" consent requirement within the Agreement until the early part of 2016.  On or about the third week of March 2016, while moving storage boxes and examining contents therein, Plaintiff Rice came across a copy of the Agreement and began to peruse it.  While perusing that portion of Section 6.1 that states *"… Owner shall not lease the Property, or any portion thereof, without Agency's prior written consent."* Plaintiff Rice then became cognizant of the "written" requirement to lease a portion thereof of the Property to a roommate.

42.     At 11:19 AM on March 23rd 2016, Plaintiff Rice again reached out to Ms. Horner via email and requested that she write a letter on his behalf confirming the SFRA did indeed give permission to Plaintiff Rice allowing him to be away from the Property for more than two months per year and to have a roommate.  (See **Exhibit "D"**)

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

43.    Plaintiff Rice never received a response in regard to his request as set forth above in paragraph 42.

44.    In another effort to address the "written" consent requirement and ensure his compliance, on or about April 10th 2016, Plaintiff Rice called the phone number provided in Mr. Smith's email.  Plaintiff Rice received Mr. Smith's voicemail, left a message, presumably about the "written" consent issue, and requested Mr. Smith to call him back.

45.    Plaintiff Rice never received a response in regard to his request as set forth above in paragraph 44.

46.    At no time did Ms. Horner or anyone else at the SFRA advise Plaintiff Rice about the "written" requirement/s in the Agreement (i.e. as found at that portion of Section 6.1 that states "… *Owner shall not lease the Property, or any portion thereof, without Agency's prior written consent*.";  and at that portion of Section 13.12 that states "*Any modification or waiver of any provision of this Declaration or any amendment thereto must be in writing …*").

47.    Additionally, at no time during the orientation to the 'Limited Equity Homeownership Program' or thereafter, did anyone at the SFRA advise Plaintiff Rice that the crux of the LEHP was within the Agreement, nor did they give any additional importance to the Agreement as opposed to any of the plethora of documents involved and/or associated with the Property.  And, nothing was ever said about "disability rights" or any other "rights".

48.    During the orientation to the 'Limited Equity Homeownership Program', nothing was said about variances or "written" requirements.  However, two things were stressed, a BMR owner was required to live at their property 10 months per year and, thus, the BMR owner could not rent out the entire property and not live there.  Nothing whatsoever, then and thereafter, was said about "… *a portion thereof* …" and/or about having a "roommate".  Hence, Plaintiff's questions and requests to Ms. Horner and Mr. Sobel as described in paragraphs 29 and 31.

49.    Throughout Plaintiff's ownership of the Property, Plaintiff Rice relied on Ms. Horner and others at the SFRA and, subsequently, the MOHCD to be responsive to his questions and inquiries; and to provide accurate, comprehensive, honest, appropriate answers and information and guidance in a timely & responsive manner.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    50.    In early 2017, Plaintiff Rice began to pursue refinancing his then existing

2  mortgage and reached out to 3 or 4 MOHCD approved lenders, but received no response.  After

3  complaining to the MOHCD, they provided him an updated list of approved lenders and

4  Plaintiff Rice connected with a MOHCD approved lender, and on September 5th 2017 he began

5  the process of refinancing his mortgage to obtain a lower interest rate.

6    51.    Although Plaintiff Rice did not have a roommate at the time, he desired to obtain

7  another roommate and was intent on clearing up the matter of "written" consent with the

8  MOHCD.  Thus, and prior to the compliance issue being raised by the MOHCD, Plaintiff Rice

9  reached out to his Physician for a letter of support in obtaining "written" consent from the

10  MOHCD for his reasonable and necessary disability related needed accommodation.

11    52.    In a letter ("Physician's Letter") dated September 19th 2017, Alison Ludwig, MD,

12  Physician Chief of Medical Practice at the San Francisco Veterans Affairs Medical Center

13  ("Plaintiff's Physician") informed the Defendants of the critical role that Plaintiff's Roommate

14  plays in his treatment plan, and that having a roommate living with him has made it possible for

15  him to maintain a stable home environment.  Moreover, having a roommate had contributed to a

16  significantly better level of mental health, emotional stability, and well-being in general for

17  Plaintiff Rice.  More specifically, having a roommate significantly diminished Plaintiff's severe

18  issues with isolation and loneliness, which had proven to be debilitating to Plaintiff, as shown in

19  **Exhibit "E"** and incorporated by reference herein.

20    53.    Plaintiff's Roommate is, therefore, a required part of his treatment for his

21  disabilities, has been proven to ameliorate the effect of his disability by providing a normal

22  home environment, emotional support, and companionship, and was helpful in his engagement

23  of major life activities.  Furthermore, Plaintiff Rice was not in, and had no foreseeable prospect

24  of, a "significant other" relationship with anyone that could and would become his wife or

25  domestic partner that lives with him and thus eliminate his need for a policy accommodation to

26  have a roommate.

27  ///

28  ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

Page12

1    54.    Plaintiff Rice, having formerly obtained permission from the SFRA and/or
2    pursuant to his disabled status, disability, and/or disability related needs, reasonably believed the
3    MOHCD would honor his request for "written" consent to lease a portion thereof of the
4    Property to a roommate and entered into a new rental agreement on October 15th 2017 with Ms.
5    Laura Raquel Camacho ("Ms. Camacho").  The terms thereunder were $800.00 per month rent,
6    and $800.00 security deposit, pursuant to a "month-to-month" lease agreement, as shown in
7    **Exhibit "F"** and incorporated by reference herein.

8    55.    Plaintiff Rice was initially informed of the MOHCD's concerns regarding his
9    "written" consent compliance with the Agreement on October 19th 2017 via an email from Mr.
10   Sean Fitzgerald of First Republic Bank (the institution refinancing Plaintiff's mortgage), as
11   shown in **Exhibit "G"** and incorporated by reference herein.

12   56.    In Plaintiff's emailed responses to the MOHCD on October 19th 2017 and on
13   October 22nd 2017, Plaintiff Rice set forth his separate and prior good faith efforts to
14   communicate with them and of his disabled status, disability, and disability related needs.
15   Plaintiff Rice explained he had obtained (verbal) permission from Ms. Horner of the SFRA, and
16   he provided a true and correct copy of the letter from his primary care physician in support of
17   his request to have roommates.  And, in both emails, Plaintiff Rice requested that the MOHCD
18   honor the (verbal) permission he had previously obtained from Ms. Horner of the SFRA. (See
19   **Exhibit "D"**) and as shown in **Exhibit "H"** and incorporated by reference herein.

20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

57.    On October 26th 2017, via email from Ms. Cissy Yin ("Ms. Yin"), Plaintiff Rice received a pdf of a letter dated October 26th 2017 ("the Action Required Letter", physical letter subsequently received via U.S.P.S) which, in part, states *"Although you may have received verbal approval by the Agency to have a roommate, there is no record that the Agency approved you leasing out your Property.  This unapproved lease of the Property is a direct violation of the covenants and restrictions in the Delcaration* [sic] *of Restrictions ("Default") and constitutes an Event of Default ...* ***TO CURE THIS DEFAULT****, you must terminate any lease of the Property, and declare that you will not lease any part of the Property in the future without the prior written consent of MOHCD.  Please submit evidence that you have terminated any lease and the notarized declaration to our office ..."*, as shown in **Exhibit "I"** and incorporated by reference herein.

58.    Due to the MOHCD's threat of "... *enforcement action* ..." within the fifth paragraph of the Action Required Letter and by holding Plaintiff's mortgage refinancing hostage (i.e. they would not provide their required approval otherwise), Plaintiff was forced to terminate his then existing roommate situation which had proved helpful with his disability.

59.    Plaintiff Rice terminated the Lease Agreement with Ms. Camacho effective October 31st 2017 and submitted a copy of the termination document and an addendum to that document dated October 31st 2017 to the MOHCD in order to satisfy the MOHCD demands outlined in the Action Required Letter, as shown in **Exhibit "J"** and incorporated by reference herein.

60.    Furthermore, Plaintiff Rice complied with all of the MOHCD's demands.

61.    At 12:05 AM on October 29th 2017, Plaintiff Rice again reached out to Ms. Horner via email to inform her of the compliance issues he was having with the MOHCD, and Plaintiff Rice immediately received an "*I am out of the office ...*" automatic reply, as shown in **Exhibit "K"** and incorporated by reference herein

62.    Plaintiff Rice never received any other response in regard to his request as set forth above in paragraph 61, nor any other communications from Ms. Horner.

63.    Plaintiff Rice made no further effort to obtain assistance from Ms. Horner.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

64.    Regarding the wavier to be away from the Property for more than two months per year, the MOHCD stated requirement within the third paragraph of the Action Required Letter "… *to first notify MOHCD and submit the supporting travel documents for MOHCD's written approval.*" became acceptable to Plaintiff and, thus, not part of Plaintiff's complaint. (See **Exhibit "I"**)

### III. DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

65.    Mr. Sobel, Ms. Honer, and the SFRA were aware of Plaintiff's disabled status and disability since at least August 2nd 2007. Additionally, from 2004 through 2012 (operational end of the SFRA) Plaintiff Rice and Ms. Horner had a multitude of phone discussions about his disability and his disability related symptoms and issues with or within the homeowners association that Plaintiff Rice was a member of by virtue of his ownership of the Property.

66.    In Plaintiff's 5:08 PM August 4th 2015 email to Mr. Smith, Plaintiff Rice, in part, states "*FYI, I am a 61 y/o 100 percent service connected disabled Viet-Nam Era veteran.*" [sic] and, thus, the MOHCD had knowledge of Plaintiff's disabled status from at least August 4th 2015. (See **Exhibit "D"**)

67.    In the Physician's Letter dated September 19th 2017, Plaintiff's Physician recommended to the MOHCD that it approve Plaintiff's request to have a roommate. Plaintiff's Physician made the request on the basis that such an accommodation would be significantly helpful and beneficial to Plaintiff's mental health and in consideration of his disabled status. (See **Exhibit "E"**).

68.    In the third paragraph of the Action Required Letter, the MOHCD acknowledge receipt of the Physician's Letter but they do not acknowledge, make note, or provide any recognition of Plaintiff's disabled status, disability or disability related needs. The MOHCD merely state therein what Plaintiff was already allowed to do at anytime without permission from anyone ("*You may have roommates, without charging rents.*"), which fell well short from that which would have been sufficient for Plaintiff's disability related needs pursuant to the directive given by Plaintiff's Physician. (See **Exhibits "I"** and **"E"**)

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    69.    Plaintiff Rice sent an email on October 27th 2017 to Ms. Yin and copied Ms.

2    Maria Benjamin ("Ms. Benjamin"), and Mr. Keith Nagayama ("Mr. Nagayama"), in which he

3    explained his disability, his disability related needs, and his struggles with isolation &

4    loneliness.   Plaintiff Rice further submitted that he should be accommodated pursuant to the

5    ADA, as shown in **Exhibit "L"** and incorporated by reference herein.

6    70.    Throughout Plaintiff's ownership of the Property, he believed that any and all

7    "disability" rights & accommodations were covered by and within the ADA and he was not

8    cognizant that "disability" rights & accommodations with respect to housing were in the Fair

9    Housing Act and/or the California Fair Employment and Housing Act.   Plaintiff Rice became

10   cognizant of "disability" rights & accommodations in the Fair Housing Act on May 8th 2018

11   when he went to the ADA website to file a complaint and was redirected to the HUD Office of

12   Fair Housing and Equal Opportunity in San Francisco ("FHEO/SF") and filed a complaint, and

13   of the California Fair Employment and Housing Act in July of 2019 while preparing this

14   complaint.

15   71.    Ms. Yin responded to Plaintiff's email of October 27th 2017 in an email dated

16   November 1st 2017 and, in part, she states *The Americans with Disabilities Act (ADA) is not*

17   *applicable to this situation*.".  (See **Exhibit "L"**)

18   72.    From October 27th 2017 to January 23rd 2018, Plaintiff Rice made phone calls

19   and sent emails (directly or copied) to Ms. Yin, Ms. Benjamin, and Mr. Nagayama stating in one

20   form or another that he was disabled and needed the requested policy accommodation due to his

21   disabled status, disability, and/or disability related needs.

22   73.    From October 27th 2017 to January 23rd 2018, via email, Plaintiff Rice made

23   numerous requests and pleadings to Ms. Yin, Ms. Benjamin, and Mr. Nagayama for an

24   explanation why and/or the legal basis for the MOHCD denying his request for accommodation

25   with respect to his disabled status, disability, and/or disability related needs and the applicability

26   of the ADA.

27   ///

28   ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

Page16

74.     R. Michael Lieberman, an attorney, but not representing Plaintiff in the case at bar, sent a letter on Plaintiff's behalf to Ms. Yin seeking the same explanations noted above in paragraph 73, as shown in **Exhibit "M"** and incorporated by reference herein.

75.     In Ms. Yin's email to R. Michael Lieberman dated December 18th 2017 she, in part, states *"Our office is in receipt of your letter dated December 4. 2017 regarding a request for reasonable accommodation on the above-referenced matter.  I have left a few messages to your office over the last couple of weeks in an attempt to discuss the case with you."* [sic]*,* as shown in **Exhibit "N"** and incorporated by reference herein.

76.     R. Michael Lieberman forwarded Ms. Yin's email to Plaintiff Rice and stated *"See below. (I never received any calls. She may have called someplace else.)"*.  (See **Exhibit "N"**)

77.     Defendants never provided explanations or their legal basis to Plaintiff Rice regarding their denial of the applicability of the ADA and/or regarding accommodations the MOHCD could otherwise make and/or would approve for Plaintiff Rice (other than none). Furthermore, the Defendants never informed Plaintiff Rice about the applicability, or anything whatsoever, of the Fair Housing Act or the California Fair Employment and Housing Act.

78.     In at least two phone discussions Plaintiff Rice had with Ms. Yin, Plaintiff Rice explained that he derives emotional, mental, and psychological benefits from living with a roommate and, thus, the importance of being allowed to have a roommate.  In one of those phone discussions Plaintiff Rice went on to explain that a non rent-paying roommate (i.e. a guest) *"… does not work."*, and to require Plaintiff Rice to provide free housing (at Plaintiff's expense) to another person would not be fair or reasonable to him. Additionally, regarding common property costs (e.g. HOA fees and insurance), Plaintiff asked if he could collect any or some amount of rent, Ms. Yin's response was that Plaintiff Rice could not collect any rent.

///

///

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

79.     Plaintiff Rice left voicemails and sent emails to Ms. Benjamin on January 13th, 17th, and 18th 2018 seeking a face to face meeting with her to explain reasons for the necessity of the MOHCD to provide a necessary and reasonable disability related policy accommodation to him pursuant to his disabled status, disability, and disability related needs.  Plaintiff Rice was never afforded a face to face meeting with Ms. Benjamin.  However, Plaintiff Rice was afforded a 23 minute discussion with Ms. Benjamin via a phone call on January 23rd 2018, as shown in **Exhibits "O", "P" "Q", "R", and "S"** and incorporated by reference herein.

80.     During the phone discussion Plaintiff Rice had with Ms. Benjamin on January 23rd 2018, Plaintiff Rice explained his disability and his disability related needs a number of times and set forth symptoms he suffered as a result of his disability, in-particular isolation & loneliness.   Despite Plaintiff's explanations and pleadings, Ms. Benjamin was absolutely adamant that he would not be granted a necessary and reasonable disability related policy accommodation from the MOHCD for written consent to lease a portion thereof of the Property to a roommate.  Mostly, by simply stating "No" repeatedly.

81.     During the phone discussion Plaintiff Rice had with Ms. Benjamin on January 23rd 2018, Ms. Benjamin suggested to Plaintiff Rice that he could easily find someone to live at the Property for free (i.e. a "non rent-paying" roommate).    Plaintiff Rice responded emphatically and stated *"Such a person would be a guest and not a roommate, and I don't need your or anybody's permission to have guests stay at my home!"*, Ms. Benjamin's response was *"You're right."*.   There was no further discussion concerning the distinction/s or definition/s of and/or between "rent paying" roommate, "non rent-paying" roommate, and/or "guest".  Plaintiff Rice went on to explain that a "non rent-paying" roommate would not work, create more problems, and did not satisfy his disability related needs.   But, Ms. Benjamin remained absolutely adamant that he would not receive his requested necessary and reasonable disability related policy accommodation from the MOHCD for written consent to lease a portion thereof of the Property to a roommate.

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

82.     At least twice During the phone discussion Plaintiff Rice had with Ms. Benjamin on January 23rd 2018, Plaintiff Rice requested and pleaded for an explanation of and/or the legal basis for the MOHCD denying the applicability of the ADA and/or denying Plaintiff an accommodation otherwise. Ms. Benjamin's only response was "*Legal said so.*" and she neither offered nor made any other explanation.

83.     Thus, the only kind of roommate the MOHCD would allow is a person that lived at the Property *gratis* and, consequently, at Plaintiff's expense.

84.     Plaintiff's Physician recommended a stable home environment whereby having a roommate would contribute beneficially to Plaintiff's mental health.  This arbitrary restriction imposed by the MOHCD would effectively force Plaintiff to financially support and care for the needs of such a roommate.  Such arrangement would certainly not serve to contribute to Plaintiff's stability and as such would create an undue hardship on Plaintiff which would greatly exacerbate his condition.

85.     The Defendants never provided Plaintiff Rice any explanations or their legal basis as to why the ADA did not apply, nor did they provide any information as to what accommodations could otherwise be made for Plaintiff Rice (as could, should, would under the Fair Housing Act and/or the California Fair Employment and Housing Act).

86.     The MOHCD was always absolutely adamant that Plaintiff's necessary and reasonable disability related policy accommodation to lease a portion thereof of what was his Property to a roommate was not possible and would always be denied.

87.     The Defendants never informed Plaintiff Rice about the applicability of the Fair Housing Act or the California Fair Employment and Housing Act or provided any other appropriate guidance, counseling, and/or referral to such.

88.     As a participant in a program that was administered by the MOHCD (a "public entity"), Plaintiff Rice was a "client" and/or a "user of services" and/or "an interested party" of the MOHCD and the services they provide (not only to the Property but otherwise, as well), and Plaintiff Rice fully expected and deserved to receive accurate, comprehensive, honest, appropriate answers and information and guidance in a timely & responsive manner from them.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

89.     The MOHCD website is located at "sfmohcd.org" and at a sub-page located at "sfmohcd.org/vision-strategic-plan" is *Download our MOHCD mission one-pager*" which provides a pdf entitled "MOHCD IDENTITY.pdf", as shown in **Exhibit "T"** and incorporated by reference herein.

90.     The MOHCD IDENTITY.pdf, in part, states the following: "*Who We Are - We support San Franciscans with affordable housing opportunities and essential services to build strong communities.*" and "*What We Do - CREATE ...; PRESERVE ...; PROTECT - Vulnerable Residents - ... Legal Services ...; EMPOWER - ... Counseling ...*".

91.     In a document provided by the U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity entitled 'Joint Statement of the Department of Housing and Urban Development and the Department of Justice *Reasonable Accommodations Under the Fair Housing Act*' at and within the fourth paragraph of question 7 it states "*... Providers should be aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable.*", as shown in **Exhibit "U"** and incorporated by reference herein.

92.     The MOHCD's, Ms. Yin's, and Ms. Benjamin's statements and/or suggestions that Plaintiff Rice could have roommates without collecting rents was not an accommodation, alternative or otherwise, in that no such permission was required for Plaintiff Rice to have such persons stay at the Property.  Regardless, that suggested solution and/or "alternative" did not meet Plaintiff's needs.  Furthermore, no appropriate discussion of whether or not Plaintiff Rice was willing to accept an "alternative" accommodation and/or his accurate knowledge about the functional limitations posed by his disability ever took place, nor was such discussion offered to Plaintiff by the Defendants.

///

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1       93.    Plaintiff's necessary disability related policy accommodation would neither

2    induce nor incur any negative condition, situation or consequence upon the MOHCD or anyone

3    else and would not create an undue financial or administrative burden to the MOHCD or to

4    anyone else. Therefore, Plaintiff's requested necessary disability related policy accommodation

5    was reasonable and it would have been reasonable to the MOHCD to provide it.

6       94.    In Plaintiff's email dated November 7th 2017 to Ms. Yin and copied to Mr.

7    Nagayama, Plaintiff Rice, in part, states *"... how should I proceed in obtaining the required*

8    *"written" consent or permission?"*.   In the second paragraph of Ms. Yin's emailed response

9    dated November 8th 2017, she, in part, states: *"The permission to rental of a BMR unit is against*

10    *the nature of the Program."* [sic], as shown in **Exhibit "V"** and incorporated by reference

11    herein.

12       95.    Referencing the fourth paragraph of the Action Required Letter, and in the first

13    paragraph of Ms. Yin's emailed response dated November 8th 2017, and described at length in

14    her November 1st 2017 email that, in part, states *"The permission to temporarily rent out a BMR*

15    *unit may only be granted in circumstances where the household is forced to temporarily relocate*

16    *due to employment requirements, or where the household is temporarily experiencing financial*

17    *hardship, …"* demonstrates that, with appropriate justification, renting an entire BMR property

18    (let alone a *"... portion thereof"*) is not considered to be against the nature of the Program by the

19    MOHCD in at least two situations.  (See **Exhibits "I"** and **"V"**) and as shown in **Exhibit "W"**

20    and incorporated by reference herein.

21       96.    In Ms. Yin's emailed response dated November 8th 2017, where she, in part,

22    states: *"The permission to rental of a BMR unit is against the nature of the Program."* [sic] also

23    infers that providing Plaintiff's necessary and reasonable disability related policy

24    accommodation would be a "fundamental alteration" to the Agreement.  (See **Exhibit "V"**)

25    ///

26    ///

27    ///

28    ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    97.    Given the existence of the provision at Section 6.1 in the Agreement to allow for

2  an owner to "… *lease the Property, or any portion thereof* …", provided owner obtain's "...

3  *Agency's prior written consent* ...", the leasing of the Property or any portion thereof was a

4  possibility under the terms of the Agreement and not prohibited outright.   And, thus, not a

5  "fundamental alteration" nor an "alteration" at all.  (See **Exhibit "B"**)

6      **IV. PLAINTIFF'S DAMAGES RESULTING FROM DEFENDANTS REFUSAL TO**

7      **PROVIDE A NECESSARY AND REASONABLE DISABILITY RELATED POLICY**

8      **ACCOMMODATION AND PERSONAL INJURY**

9    98.    During the phone discussion Plaintiff Rice had with Ms. Benjamin on January

10  23rd 2018, Plaintiff Rice further set forth to Ms. Benjamin that in denying his request for a

11  necessary and reasonable disability related policy accommodation, the MOHCD was essentially

12  forcing upon him a living situation that was isolating and lonesome which, for Plaintiff Rice,

13  was emotionally, mentally, and psychologically *unbearable,* and was effectively and tantamount

14  to forcing him to sell his home and move.  Ms. Benjamin's only response was "*No, we're not.*",

15  Plaintiff's very emphatic response was "*Yes, you are!*".    Thereafter, very few words were

16  exchanged and that phone call ended.

17    99.    Immediately subsequent to the phone discussion Plaintiff Rice had with Ms.

18  Benjamin on January 23rd 2018, Plaintiff Rice felt completely defeated, rejected, despondent,

19  severely and intensely mentally distressed, and had lost any hope of obtaining his necessary and

20  reasonable disability related policy accommodation from the MOHCD.   And, thus, Plaintiff

21  Rice continued with the sale of his home but vowed to himself that in due time he would file a

22  complaint.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

100.   The Defendants' actions and conduct severely disrupted and destabilized Plaintiff Rice and his life, and he became very distraught.  Out of a desperation to escape the emotional, mental, and/or psychological trauma, overwhelming despair, and the seemingly permanent isolating and lonesome home environment, he elected to sell what was his home as shown in Plaintiff's email dated December 13th 2017 to Ms. Melissa Borzoni ("Ms. Borzoni", Below Market Rate Program Specialist, MOHCD), Ms. Yin, Ms. Benjamin and Mr. Nagayama; and in that email Plaintiff Rice states *"I am selling my BMR condominium "under protest", primarily because the MOHCD has ignored my disability and denies that the ADA is applicable to this/my situation - which is, and has been, injurious and detrimental to me.  If and when I can, I intend to seek recourse through an appropriate legal channel."*, as shown in **Exhibit "X"** and incorporated by reference herein.

101.   The Defendants never responded to or acknowledged Plaintiff's "under protest" declaration or any of his other complaints of emotional & mental distress, psychological injury, anguish, and/or sufferings.

102.   In Plaintiff's email of December 19th 2017 to Ms. Yin and copied to R. Michael Lieberman, Plaintiff Rice, in part, states *"However, the MOHCD is ignoring my mental illness and my disabled status and the ADA. Instead, the MOHCD has chosen to treat me as a crook and in an adversarial manner - much to the detriment of my mental health."*, as shown in **Exhibit "Y"** and incorporated by reference herein.

103.   In Plaintiff's email seeking explanations on January 13th 2018, Plaintiff's severely diminished emotional, mental, and psychological condition, and his distraught state is clearly notable by his expressive use of all CAPS, **bold** type, desperate words, and many exclamation marks.  But, the Defendants never responded or expressed any acknowledgment, recognition, concern, or took any action with respect to Plaintiff's condition, well-being, or sufferings, as shown in **Exhibit "Z"** and incorporated by reference herein.

///

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

104.   In Plaintiff's email of January 17th 2018 to Ms. Benjamin and copied to others Plaintiff Rice, in part, states "*This situation is very stressful for me and has impacted me quite negatively thus far, and I would very very much like to resolve it so I can feel and do better.*". (See **Exhibit "P"**)

105.   In Plaintiff's email of January 18th 2018 to Ms. Benjamin and copied to others, Plaintiff Rice, in part, states "*Your, and the MOHCD, unresponsive behavior is exacerbating my situation and mental condition.*".  (See **Exhibit "Q"**)

106.   As noted, during the phone discussion Plaintiff Rice had with Ms. Benjamin on January 23rd 2018, Plaintiff Rice clearly and emphatically and repeatedly explained his disabled status, disability, disability related needs, and his sufferings of the related symptoms, especially his isolation & loneliness, and his severely distraught state of mind.  However, Ms. Benjamin never voiced any acknowledgment, recognition, or concern of such - none, whatsoever, other than suggesting that someone could live at the Property for free as described in paragraph 81.

107.   Plaintiff Rice clearly and significantly communicated to the Defendants that their treatment of and/or behavior toward him, including their unresponsiveness, was very negatively impacting his emotional, mental, and psychological condition and state of mind.  Inexplicably, the Defendants never expressed any acknowledgment, recognition, concern, or took any action (other than to ignore) with respect to Plaintiff's health complaints, condition, well-being, or sufferings.

108.   Due to conditions brought on by Defendants' actions (including treatment of and/ or behavior toward Plaintiff) Plaintiff Rice suffered and continues to suffer exacerbated mental health issues, significant and at times overwhelming emotional, mental,  psychological distress and pain, debilitating anxieties, a severely distraught state of mind, and stress related physical symptoms.

109.   At great loss and pain to Plaintiff Rice, under protest, great duress, and against his true desire to continue on at the Property with a roommate (to be clear, a rent-paying individual), Plaintiff Rice sold the Property that had been his home of 14+ years, which he would not have done but for the actions of the Defendants.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

110.    Plaintiff's home was a Below Market Rate condominium of 1,050 square feet located in a nice neighborhood of San Francisco, CA with an estimated market value of $1,050,000.00 at time of sale which he enjoyed through possession and which he will not be able to replace.

111.    Notwithstanding the actions of the Defendants and/or Plaintiff's condition, Plaintiff's home to Plaintiff Rice was a place of refuge, sanctuary, and stability for 14+ years and the only home Plaintiff Rice ever owned.

112.    Plaintiff's home to Plaintiff Rice provided security and gave him purpose and meaning as well as standing in the community which, very importantly, made Plaintiff Rice part of a community and provided him a sense of belonging.

113.    Furthermore, the loss of Plaintiff's "affordable" housing effectively forced him out of the locale of San Francisco and the Bay Area that, thus far, had been his "home" for 39 years of his life and, to him, meant everything "home" means to a person.  Importantly, the San Francisco VA Medical Center has been his primary health care provider since 1994 and which he now continues with from a distance.

114.    The loss of what was Plaintiff's home has left him emotionally, mentally, and psychologically devastated.  Furthermore, this ordeal has left him severely distraught and "torn apart" on the inside and has taken over his thoughts and feelings, which has diminished his confidence, interpersonal and social skills & abilities, and his happiness and capacity to enjoy life.  Thus, making him experience even more isolation and loneliness and other sufferings from his disability and otherwise.

115.    Plaintiff Rice has yet to find closure to this intensely agonizing ordeal, healing remains elusive, and he has yet to recover.

116.    Due to logistical limitations in the moving process, Plaintiff Rice sold a significant amount of his personal property for much less than their true value and he gave even more items away, resulting in a monetary loss conservatively and reasonably estimated to be $15,000.00.

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

117.    At Plaintiff's expense and trouble, Plaintiff Rice, in two (2) trips, transported the remainder of his personal property from San Francisco to Austin, Texas in his 2008 Ford F-150 pickup truck and put his personal property into storage, including his truck, at a cost conservatively and reasonably estimated to be $5,000.00.

## V. DEFENDANTS ORDINARY AND GROSS NEGLIGENCE,
## AND WRONGFUL CONDUCT

118.    The Defendants owed a duty of care to Plaintiff Rice.

119.    Considering Defendants are "Public Authorities" in government, law, and especially housing, and, thus, the actual positions of their offices and official duties that they held over Plaintiff Rice, they had an inherent duty of full disclosure to him of any and/or all material and/or pertinent information regarding the issue/s described in this complaint.

120.    The Defendants completely and/or overwhelmingly ignored Plaintiff's disabled status, disability, disability related needs, conditions and circumstances, the medically supported and recommended directive, and the mandates of the Fair Housing Act and/or the California Fair Employment and Housing Act.

121.    The Defendants completely and/or overwhelmingly ignored Plaintiff's health, and the severe and intense emotional, mental, and psychological suffering, distress, and anguish he was experiencing despite his repeated and emphatic communications to them about such.

122.    Furthermore, the Defendants completely and/or overwhelmingly ignored, and/or gave no consideration to Plaintiff's distraught and diminished state of mind and/or the devastating consequences that their actions and/or conduct created for him.

123.    The Defendants completely and/or overwhelmingly withheld, omitted, suppressed, and/or concealed critically important material and/or pertinent information (especially that of the Fair Housing Act and its' provisions relating to disabled persons and the same for the California Fair Employment and Housing Act).   And, Defendants withheld, omitted, suppressed, and/or concealed other material and/or pertinent information unknown to Plaintiff Rice.

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

124.   The Defendants frequently did not communicate to Plaintiff Rice when they should have and, thus, they were highly and very improperly unresponsive.

125.   The Defendants completely and/or overwhelmingly ignored Plaintiff's numerous requests and pleadings for explanations and/or elucidation about critically important material and/or pertinent information and/or issues.  When Defendants did make a response to such, they often provided inaccurate, false, or misleading information or other misrepresentations, in addition to or part of their withholdings, omissions, suppressions, and/or concealments.

126.   The Defendants were deceitful to Plaintiff Rice.

127.   The Defendants did not provide appropriate discussion/s, an interactive process, or any information about applicable "disability rights" or "rights" to Plaintiff Rice.

128.   In Ms. Yin's email dated November 1st 2017, she, in part, states *"The Americans with Disabilities Act (ADA) is not applicable to this situation."*.  In some respects, her statement may be true.   But, it was misleading and she did not disclose the applicability of the Fair Housing Act or the California Fair Employment and Housing Act, or provide any explanation or other guidance, even though she had a legal and/or inherent duty to do so.  (See **Exhibit "L"**)

129.   The word "roommate" is not found in the Agreement.  Thus, no distinction and/ or definition is made or inferred in the Agreement between a "rent-paying" roommate and a "non rent-paying" roommate.  (See **Exhibit "B"**)

130.   In the Action Required Letter, the MOHCD makes a distinction between *"...to have a roommate, ..."* (which they acknowledge Plaintiff Rice *"... may have received verbal approval by the Agency ..."*) and *"... leasing out your property."* (for which *"... there is no record that the Agency approved ... "*).  Thus, the MOHCD creates, for the first time in the mind of the Plaintiff and in great opposition to the common understanding, a distinction between "roommate" and "leasing a portion thereof" and two (2) qualified definitions of the word "roommate".  One definition as "non rent-paying" (i.e. a person that lives at a property *gratis* at owner's expense, other than a dependent child or other appropriate dependent) and the other as "rent-paying".  (See **Exhibit "I"**)

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    131.    Furthermore, using "roommate" in the qualified "non rent-paying" meaning

2  served the Defendants' decision or scheme to evade and/or circumvent the mandates of the Fair

3  Housing Act and/or the California Fair Employment and Housing Act and, thus, deny Plaintiff

4  Rice the accommodation he was owed; and to deceive him.

5    132.    For personal benefit and/or gain, for employment, professional, or political

6  reasons, standing, motivations, benefit and/or gain, the Defendants made misrepresentations and

7  deceptions to Plaintiff Rice by redefining, manipulating, and/or through a misleading use of

8  words, a combination of words, and/or phrases; by withholding omitting, suppressing, and/or

9  concealing critically important material and/or pertinent information from him; by completely

10  concealing the Fair Housing Act and the California Fair Employment and Housing Act form

11  him; and by making other misrepresentations, omissions, suppressions, concealments, and/or

12  deceptions unknown to Plaintiff Rice.

13    133.    Importantly and specifically, Defendants made a misrepresentation to Plaintiff

14  Rice by concealing from him critically important material and/or pertinent information, and/or

15  knowledge of the Defendants' legal requirement to make reasonable accommodations in rules,

16  policies, practices, or services, when such accommodations may be necessary to afford a person

17  with a disability equal opportunity to use and enjoy a dwelling pursuant to the Fair Housing Act.

18    134.    Importantly and specifically, Defendants made a misrepresentation to Plaintiff

19  Rice by concealing from him critically important material and/or pertinent information, and/or

20  knowledge of his right, all along, to have a (rent-paying) roommate despite his lack of "written"

21  consent from the Agency pursuant to the Fair Housing Act.

22    135.    Defendants' misrepresentations, omissions, suppressions, concealments, and/or

23  deceptions, as described above in paragraphs 128 through 134, in whole or in part, was an act of

24  actual fraud.  And, if proven not to be actual fraud, it was an act of constructive fraud.  And, it

25  was an act of concealment fraud.

26    136.    Despite a legal requirement and overwhelming reasons to do so, the Defendants

27  denied Plaintiff Rice a necessary and reasonable disability related policy accommodation.

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

137.    The Defendants acted in reckless disregard of Plaintiff Rice, and they did not exercise or conform to a duty of care, did not exercise or conform to an inherent duty of full disclosure, and did not act in good faith.

138.    Defendants treatment, behavior, and/or communications to Plaintiff Rice, in whole or in part, was in fact and/or tantamount to an act or acts of coercion, intimidation, threat, and/or interference.

139.    The actions of the Defendants greatly, significantly, and severely harmed Plaintiff Rice.

## PROCEDURAL BACKGROUND

140.    As required by the Fair Housing Act, 42 U.S.C. § 3610(a) and (b), the FHEO/SF (under authority and on behalf of the Secretary of HUD) conducted an investigation of the complaint made by Plaintiff Rice, attempted conciliation without success, and prepared a final investigative report, as shown in **Exhibit "AA"** and incorporated by reference herein.

141.    Based on the information gathered in their investigation and pursuant to 42 U.S.C. § 3610(g), the FHEO/SF determined that their office lacked jurisdiction under applicable fair housing laws. Plaintiff disagrees and, therefore, elects to file suit in federal district court as HUD could not or did not obtain voluntary compliance.

142.    Plaintiff Rice now timely files this Complaint pursuant to the Fair Housing Act, 42 U.S.C. § 3613(a).

## FIRST CAUSE OF ACTION

## FAIR HOUSING ACT VIOLATIONS

### (Against All Defendants)

143.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

144.    Defendants discriminated against Plaintiff Rice, a person with disabilities, by way of denying him a necessary and reasonable disability related policy accommodation of written consent to lease a portion thereof of what was his Property to a roommate, necessary because of Plaintiff's disabilities in violation of the Fair Housing Act, Section 42 U.S.C. § 3604(f)(3)(B).

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

145.   Defendants discriminated against Plaintiff Rice, a person with disabilities, by way of provision of their services in connection to what was Plaintiff's Property in violation of the Fair Housing Act, Section 42 U.S.C. § 3604(f)(2)(A).

146.   Defendants' actions, in whole or in part, to Plaintiff was in fact and/or tantamount to coercion, intimidation, threat, and/or interference of Plaintiff's exercise or enjoyment of rights granted or protected by the Fair Housing Act, Sections 42 U.S.C. § 3603, 3604, 3605, or 3606, and in violation of the Fair Housing Act, Section 42 U.S.C. § 3617.

147.   Plaintiff Rice is an aggrieved person as defined in the Fair Housing Act, Section 42 U.S.C. § 3602(i)(1) and as such suffered injuries as a result of Defendants' actions.

148.   Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of the rights of Plaintiff.

149.   As a direct result of Defendants violation of the law, Plaintiff Rice suffered damages and continues to suffer damages.

## SECOND CAUSE OF ACTION

## AMERICANS WITH DISABILITIES ACT VIOLATIONS

### (Against All Defendants)

150.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

151.   Defendants discriminated against Plaintiff Rice, a person with disabilities, by way of denying him the benefits of the services or activities of a public entity through actual fraud and/or constructive fraud and concealment fraud; withholding, omitting, and/or failing to provide appropriate discussions, an interactive process, and/or due process in violation of the ADA, Section 42 U.S.C. § 12132; and the California Civil Code, as set forth in Sections 51(f) and 54(c); and an unlawful practice pursuant to the California Government Code, Section 12948.

152.   Plaintiff Rice is an aggrieved person as defined in the ADA, Section 42 U.S.C. § 12101 *et seq.* and as such suffered injuries as a result of Defendants' actions.

153.   Defendants' discriminatory actions were intentional, willful, and taken in reckless disregard of the rights of Plaintiff.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    154.    As a direct result of Defendants violation of the law, Plaintiff Rice suffered

2    damages and continues to suffer damages;

3                          **THIRD CAUSE OF ACTION**

4                      **ORDINARY AND GROSS NEGLIGENCE**

5                            **(Against All Defendants)**

6    155.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

7    156.    Defendants were ordinarily and grossly negligent to Plaintiff Rice, a person with

8    disabilities, a medical condition, and limitations to protect his rights, by way of:

9    157.    Breaching and failing to conform to the standard of care required by law in

10   violation of California Civil Code, Sections 1708 and 1714(a).

11   158.    Breaching and failing to conform to an inherent duty to provide full disclosure as

12   was appropriate in this case.

13   159.    Completely, overwhelmingly, and/or in reckless disregard to Plaintiff Rice by

14          (A).    ignoring Plaintiff's disabled status, disability, disability related needs,

15   conditions and circumstances, the medically supported and recommended directive, and the

16   mandates of the Fair Housing Act;

17          (B).    ignoring Plaintiff's health, and his severe mental suffering, distress,

18   anguish, and humiliation despite his repeated and emphatic communications and protests to

19   them about such;

20          (C).    ignoring Plaintiff's distraught and diminished state of mind and/or the

21   devastating consequences that their extreme and outrageous conduct and actions created for

22   him;

23          (D).    ignoring Plaintiff's numerous requests and pleadings for explanations

24   and/or elucidation about critically important material and/or pertinent information and/or issues;

25   and,

26          (E).    withholding, omitting, suppressing and/or concealing critically important

27   material  and/or pertinent information, and other material and/or pertinent information unknown

28   to Plaintiff.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1     160.   Being highly and very improperly unresponsive in their communications; and

2  being deceptive and/or deceitful with Plaintiff.

3     161.   Failing to provide a necessary and reasonable disability related policy

4  accommodation to Plaintiff as mandated by the Fair Housing Act, Section 42 U.S.C. § 3604(f)

5  (3)(B).

6     162.   Communications to Plaintiff that were in fact and/or tantamount, in part or in

7  totality, to being coercive, intimidating, threatening, and/or interfering with Plaintiff's exercise

8  or enjoyment of rights granted or protected by, and in violation of, the Fair Housing Act, Section

9  42 U.S.C. § 3617.

10     163.   Plaintiff Rice is an aggrieved person and as such suffered injuries as a result of

11  Defendants' actions.

12     164.   Defendants' ordinary negligence was their failure and want to exercise the

13  standard of care required by law in violation of California Civil Code, Sections 1708 and

14  1714(a).  Defendants' gross negligence was their complete, overwhelming, intentional, willful,

15  and/or reckless disregard of the rights, health, and well-being of Plaintiff Rice, and their

16  deceitfulness to Plaintiff Rice.

17     165.   As a direct result of Defendants ordinary and gross negligence, Plaintiff Rice

18  suffered damages and continues to suffer damages.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CAUSE OF ACTION**

**FRAUD, CONSPIRACY AGAINST RIGHTS, DEPRIVATION OF RIGHTS UNDER**

**COLOR OF LAW, AND ABUSE OF PUBLIC AUTHORITY**

**(Against All Defendants)**

166.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

167.    For personal benefit and/or gain, for employment, professional, or political reasons, standing, motivations, benefit and/or gain, Defendants were fraudulent, conspired against rights, made deprivations of rights under color of law, and committed an abuse of public authority upon Plaintiff Rice, a person with disabilities, a medical condition, and limitations to protect his rights, by way of:

168.    Creating and/or using an extraordinary and very uncommon use of the word "roommate" as meaning "non rent-paying" (i.e. a person that lives at a property *gratis* at owner's expense, other than a dependent child or other appropriate dependent).

169.    Using "roommate" in the qualified "non rent-paying" meaning as a solution for plaintiff's disability related need and/or to circumvent the mandates in the Fair Housing Act and/or the California Fair Employment and Housing Act and, thus, deny Plaintiff Rice an accommodation he was owed.

170.    Making misrepresentations and/or deceptions in writing and verbally to Plaintiff Rice by redefining, manipulating, and/or through a misleading use of words, a combination of words, and/or phrases.

171.    Making misrepresentations, suppressions, concealments, deceptions, withholdings, and omissions in writing and verbally of critically important material and/or pertinent information; and making other misrepresentations, suppressions, concealments, deceptions, withholdings, and omissions in writing and verbally unknown to Plaintiff Rice.

///

///

///

///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

Page33

172.    Completely concealing in writing and verbally from Plaintiff Rice

(A).    the Fair Housing Act and the California Fair Employment and Housing Act;

(B).    the legal requirement incumbent on Defendants to provide reasonable accommodations;

(C).    Plaintiff's right, all along (pursuant to the Fair Housing Act), to have a (rent-paying) roommate despite his lack of "written" consent from the Agency; and

(D).    information of any other material, persons, or department/s that could and would assist him in this case.

173.    Deceptions and deceiving Plaintiff Rice in writing and verbally.

174.    Defendants' misrepresentations, suppressions, concealments, withholdings, omissions, and/or deceptions in writing and verbally of critically important material and/or pertinent information to Plaintiff Rice, in part or in totality, was an act of actual fraud. And, if proven not to be actual fraud, it was an act of constructive fraud. And, it was an act of concealment fraud pursuant to California Civil Code, Sections 1709, 1710, 1752, and 1573; and Sections 18 U.S.C. § 1001 and 1018.

175.    Defendants' misrepresentations, suppressions, concealments, withholdings, omissions, and/or deceptions in writing and verbally of critically important material and/or pertinent information to Plaintiff Rice, in part or in totality, was carried out by two (2) or more Defendants and was a conspiracy against rights, and a deprivation of rights under color of law, pursuant to Sections 18 U.S.C. § 241 and 242.

176.    Defendants' act of fraud and deprivation of rights under color of law was an abuse of public authority, pursuant to California Government Code Section 53243.4(a)

177.    Plaintiff Rice is an aggrieved person and as such suffered injuries as a result of Defendants' actions.

178.    Defendants' act of fraud, conspiracy against rights, deprivation of rights under color of law, and abuse of public authority were intentional, willful, and carried out in reckless disregard of the rights, health, and well-being of Plaintiff Rice.

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

179.     As a direct result of Defendants fraud, conspiracy against rights, deprivation of rights under color of law, and abuse of public authority, Plaintiff Rice suffered damages and continues to suffer damages.

**FIFTH CAUSE OF ACTION**

**ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT VIOLATION**

**(Against All Defendants)**

180.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

181.     Defendants' actions to Plaintiff Rice, a dependent adult, was abuse of a dependent adult by way of violating and/or depriving him of his civil rights and rights endowed to persons with disabilities, fraud, conspiracy against rights, deprivation of rights under color of law, and abuse of public authority, in part or in totality, as described supra in the first, second, third, and forth causes of action; and by way of neglect and/or other treatment resulting in mental suffering for Plaintiff Rice pursuant to California Welfare and Institutions Code, Sections 15610.53 and 15610.57, and was the commission of a misdemeanor by the Defendants pursuant to the California Welfare and Institutions Code, Sections 15656(b).

182.     Plaintiff Rice is an aggrieved person and as such suffered injuries as a result of Defendants' abuse of a dependent adult.

183.     Defendants' abuse of a dependent adult was intentional, willful, and taken in disregard of the rights, health, and well-being of Plaintiff Rice.

184.     As a direct result of Defendants abuse of a dependent adult, Plaintiff Rice suffered damages and continues to suffer damages.

///
///
///
///
///
///
///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

Page35

1

**REQUEST FOR RELIEF**

2    WHEREFORE, Plaintiff Allison Barton Rice requests that this Court:

3    **As to the First Cause of Action:**

4    185.   Declare that Defendants' discriminatory housing practices violate the Fair

5  Housing Act as set forth above.

6    186.   Enjoin and restrain Defendants, their officers, employees, agents, successors, and

7  all other persons or corporations in active concert or participation with Defendants, from:

8    (A).   Discriminating against any person in the terms, conditions, or privileges

9  of sale or rental of a dwelling, or in the provision of services or facilities in connection with

10  such dwelling, because of disability pursuant to 42 U.S.C. § 3604(f)(2);

11    (B).   Refusing to make reasonable accommodations in rules, policies,

12  practices, or services, when such accommodations may be necessary to afford a person with a

13  disability equal opportunity to use and enjoy a dwelling pursuant to 42 U.S.C. § 3604(f)(3)(B);

14  and

15    (C).   Coercing, intimidating, threatening, or interfering with any person in the

16  exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his

17  having aided or encouraged any other person in the exercise or enjoyment of any right granted

18  or protected by section 42 U.S.C. § 3603, 3604, 3605, or 3606 pursuant to 42 U.S.C. § 3617.

19    **As to the Second Cause of Action:**

20    187.   Declare that Defendants' discriminatory practices or services or activities violate

21  the American with Disabilities Act as set forth above.

22    188.   Enjoin and restrain Defendants, their officers, employees, agents, successors, and

23  all other persons or corporations in active concert or participation with Defendants, from

24  discriminating in the services or activities of a public entity, or otherwise making unavailable or

25  denying, a user of such services or activities because of disability pursuant to of 42 U.S.C. §

26  12132.

27  ///

28  ///

Page36

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    **As to the Third Cause of Action:**

2        189.   Declare that Defendants were ordinarily and grossly negligent as set forth above.

3        190.   Enjoin and restrain Defendants, their officers, employees, agents, successors, and

4  all other persons or corporations in active concert or participation with Defendants, from:

5        (A).   Breaching and failing to conform to the standard of care in the course,

6  provision, communications, and performance of their services and/or activities and that of their

7  offices pursuant to California Civil Code Section 1714(a) and California Government Code

8  Sections 815.2 and 815.6;

9        (B).   Breaching and failing to conform to an inherent duty to provide full

10  disclosure as appropriate; and

11        (C).   Acting in disregard and in reckless disregard of the safety, health, and

12  rights of a person or persons, and being deceptive and/or deceitful in the course, provision,

13  communications, and performance of their services and/or activities and that of their offices.

14    **As to the Fourth Cause of Action:**

15        191.   Declare that Defendants committed fraud, conspiracy against rights, deprivation

16  of rights under color of law, and an abuse of public authority as set forth above.

17        192.   Enjoin and restrain Defendants, their officers, employees, agents, successors, and

18  all other persons or corporations in active concert or participation with Defendants, from any

19  and all acts of fraud, deceptions, conspiracy against rights, deprivation of rights under color of

20  law, and abuse of public authority in the course, provision, communications, and performance of

21  their services and/or activities and that of their offices.

22    **As to the Fifth Cause of Action:**

23        193.   Declare that Defendants abused a dependent adult as set forth above.

24        194.   Enjoin and restrain Defendants, their officers, employees, agents, successors, and

25  all other persons or corporations in active concert or participation with Defendants, from any

26  and all acts that would result and/or reasonably be expected to result in the abuse of a dependent

27  adult.

28  ///

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    **As to All Causes of Action**:

2    195.   Order Defendants to take such actions as may be necessary to prevent the

3    recurrence of any discriminatory, negligent, fraudulent, abusive, deceptive, and/or deceitful

4    conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful

5    conduct, including implementing policies & procedures to ensure that no applicant or resident

6    or participant of Defendants' services or activities are discriminated against due to disability;

7    196.   Order Defendants to take such affirmative steps as may be necessary to restore,

8    as nearly as practicable, Plaintiff Rice to the position he would be in but for their actions and/or

9    conduct.

10   197.   Award monetary damages to Plaintiff Rice pursuant to 42 U.S.C. § 3613(c), 42

11   U.S.C. § 12188(a), and California Civil Code Section 3281 as follows:

12          (A).   Actual compensatory economic damages in the amount of;

13                 (1).   $15,000.00 for loss of personal property incurred by logistical

14   limitations in the course of Plaintiff Rice vacating the Property;

15                 (2).   $5,000.00 for moving costs incurred to transport his remaining

16   personal property.

17                 (3).   $250,560.00 for current and future monetary loss incurred by the

18   loss of what was his Property (a BMR / affordable housing unit), conservatively, reasonably,

19   and predictably determined as follows:

20                       (a).   Expected remaining life of Plaintiff Rice at time of loss,

21   18 years, to age 82,

22                       (b).   $289,440.00 for housing costs for 18 years at the Property

23   (HOA fees, insurance expense, and mortgage interest, $1,340.00 per month X 12 X 18),

24                       (c).   $540,000.00 for fifty percent (50%) housing costs

25   ($2,500.00 per month rent) of similar and comparable property (two bedroom) located in same

26   or similar and comparable neighborhood of San Francisco and shared with a roommate for 18

27   years,

28                       (d).   (c) minus (b) equals $250,560.00;

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT

1    (B).    Actual compensatory non-economic damages in the amount of

2    $2,300,000.00 for severe and intense emotional, mental, and psychological trauma, pain &

3    suffering, and stress related physical symptoms; deprivations of rights, residence, and proximity

4    of the San Francisco locale (his home); abuse of a dependent adult; and other yet to be

5    determined or declared current and/or future sufferings experienced by Plaintiff Rice due to the

6    actions and/or conduct of the Defendants.

7    198.    Award punitive damages to Plaintiff Rice pursuant to 42 U.S.C. § 3613(c), 42

8    U.S.C. § 12188(a), and California Civil Code Section 3294;

9    (A).    $23,00,000.00 for actions and/or conduct by public authorities of

10    government, law, and housing, and, thus, appropriate in light of their extraordinary and

11    egregious indifference and lack of compunction; gross negligence; fraud; acts of deception,

12    oppression; conspiracy against rights; deprivation of rights under color of law; abuse of

13    authority; abuse of a dependent adult; violations and/or reckless disregard of civil and disability

14    mandates and rights; actions and/or conduct that was in fact and/or tantamount to coercion,

15    threat, or intimidation; other yet to be determined or declared unlawful acts; and to deter such

16    extreme and outrageous behavior by the Defendants and other similar persons and entities

17    within the City and County of San Francisco, the State of California, and the United States of

18    America.

19    199.    Order such additional relief as the interests of justice require.

21    On this 24th day of July, 2019    Respectfully Submitted,

23    By:    _Allison Barton_

24    Allison Barton Rice, Plaintiff pro per

25    ///

26    ///

27    ///

28    ///

Page 39

ALLISON BARTON RICE v. THE CITY AND COUNTY OF SAN FRANCISCO, et al.
Case No.
COMPLAINT