UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALLISON BARTON RICE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 19-cv-04250-LB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF Nos. 10, 26, 32 |

**INTRODUCTION**

Plaintiff Allison Barton Rice sued the City and County of San Francisco and various public officials, claiming violations of the Fair Housing Act, the Americans with Disabilities Act, and California state law.[1] The defendants move to dismiss all claims under Federal Rule of Civil

---

[1] Complaint – ECF No. 1 at 1 (naming the following defendants: the City and County of San Francisco; London Breed, Mayor of San Francisco; Kate Hartley, Director of the San Francisco Mayor's Office of Housing and Community Development; Maria Benjamin, Director of Homeownership & Below Market Rate Programs, San Francisco Mayor's Office of Housing and Community Development; Cissy Yin, Homeownership & Below Market Rate Programs Compliance Manager, San Francisco Mayor's Office of Housing and Community Development; Dennis Herrera, San Francisco City Attorney; and Keith Nagayama, Deputy City Attorney). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Procedure 12(b)(6).[2] The court can decide the motion without oral argument. N.D. Cal. Civ. L.R. 7-1(b).

For the reasons stated below, the court grants the defendants' motion to dismiss without prejudice, and with leave for Mr. Rice to amend his complaint by November 4, 2019.

## STATEMENT

### 1. Factual Record

Mr. Rice is a Vietnam veteran suffering from mental-health disabilities that he sustained during his time in the United States Navy and Marines.[3] On October 25, 2004, Mr. Rice bought a below-market-rate condominium (the "Property") in San Francisco through the Limited Equity Homeownership Program, which was then administered by the San Francisco Redevelopment Agency ("the Agency").[4] As part of the purchase, on September 24, 2004, he signed an agreement (called the Limited Equity Homeownership Program Declaration of Resale Restrictions and Option to Purchase Agreement (the "Agreement")), which set forth the terms of purchase and restrictions on the Property.[5] Specifically, it required him to occupy the Property as his principal residence for at least ten months each year and prevented him from leasing the Property or any part of it without the Agency's written consent.[6] The Agreement required that all notices,

---

[2] Mot. – ECF No. 10. Mr. Rice moves for default judgment and to exempt the case from the court's alternate-dispute-resolution ("ADR") program. Mot. – ECF No. 26; Mot. – ECF No. 32. The motion for default judgment is procedurally irregular for the reasons that the defendants advance. *See* Fed. R. Civ. P. 55; Opp. to Mot. for Default J. – ECF No. 39. The court denies Mr. Rice's motion to exempt the case from the ADR program.

[3] Compl. – ECF No. 1 at 5 (¶¶ 11–12).

[4] *Id.* at 5 (¶ 10) and 7 (¶ 25).

[5] *Id.* at 8 (¶ 26) (citing Agreement, Ex. B to Compl. – ECF No. 1–1 at 4–19). The court takes judicial notice of this document under the incorporation-by-reference doctrine. *Knievel v. ESPN, Inc.*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[6] Agreement, Ex. B. to Compl. – ECF No. 1–1 at 8.

ORDER – No. 19-cv-04250-LB                2

demands, and other communications required or permitted by the Agreement be made in writing to a specific address in San Francisco and did not list a telephone or email address.[7]

Because he wanted a roommate to help him maintain his mental health, on August 2, 2007, Mr. Rice called Edith Horner, who worked for the Agency, who directed him to her supervisor, David Sobel.[8] On August 2, 2007, in a telephone call, Mr. Sobel told Mr. Rice that he could modify the Property to accommodate a roommate if he would return it to its original design "if need be" if Mr. Rice decided to sell it.[9] In the same call, Mr. Sobel told Mr. Rice to email a written request to Mr. Sobel and Ms. Horner.[10] That day, Mr. Rice sent the following email:

> Hi, David,
>
> As you requested, I am writing to inquire about the ability in the eyes of the SFRA for me to erect a wall in my condo to create two smaller rooms out of one larger room. It also strikes me that, if need be, I could and would be willing to make it conditional that I return the space back to its original design if and when I move to some place else.
>
> FYI, I am a 53 year old retired disabled veteran, without much money, and with no particular elements on the horizon that would indicate that I would be moving or making much of any changes before I die.
>
> Thanks again for all of your assistance, and thanks much to the SFRA.[11]

Later in 2008, on a phone call, Mr. Rice asked Ms. Horner for permission to have a rent-paying roommate and a waiver that allowed him to be away from the Property for more than two months per year.[12] Ms. Horner "approved both requests verbally over the phone."[13] Mr. Rice modified the property to allow a roommate and acquired a roommate in September 2009.[14]

---

[7] *Id.* at 15 (the cited address was San Francisco Redevelopment Agency, 770 Golden Gate Avenue, San Francisco, California 94102).

[8] Compl. – ECF No. 1 at 8 (¶¶ 27–28).

[9] *Id.* (¶ 29).

[10] *Id.*

[11] Email, Ex. C to Compl. – ECF No. 1-1 at 20.

[12] Compl. – ECF No. 1 at 9 (¶ 31).

[13] *Id.*

[14] *Id.* (¶¶ 32–33).

On August 4, 2015, Mr. Rice emailed Ms. Horner to ask for permission to be away from the Property for more than two months a year so that he could travel to Europe:[15]

> Hi Edith,
>
> This is Mr. Allison Barton Rice, I assume you remember me — BMR owner at 200 Brannan. Anyway, I would like to ask you about me traveling — which I asked you about a few years ago. and I would like to clarify what we discussed. So, I am trying to contact you.
>
> Please advise if either of the email addresses I'm using are still good for you.
>
> Thank you and have a nice day.[16]

Ms. Horner replied to the email that day and told Mr. Rice that she was no longer with the Agency (and now worked for a different CCSF agency).[17] She cc'd Garret Smith and Gwen Sebay (at the Mayor's Office of Housing and Community Development), saying that they "might be able to help you."[18] Mr. Smith responded to the email that day and told Mr. Rice to direct any questions concerning the Property to him.[19] Mr. Rice emailed back that day, cc'ing Ms. Horner and saying that she told him around 2008 or 2009 that it was okay to travel for more than two months a year and asking to travel for longer.[20] The entire email is as follows:

> Dear Garrett P. Smith,
>
> My name is Mr. Allison Barton Rice and I own a BMR at 200 Brannan St. Apt 316 SF, CA 94107 which I acquired in 2004 via the San Francisco Redevelopment agency. FYI I am a 61 y/o 100 percent service connected disabled Viet-Nam Era veteran. I have always been in the U.S. with exceptions of fairly short travels to the Far East, Panama, Mexico, and Puerto Rico much earlier in my life
>
> I believe sometime around 2008 or 2009, via a phone conversation, I asked Edith Horner about traveling with respect to my contractual requirement to "occupy" my

---

[15] *Id.* (¶ 35); *see* Email String, Ex. D. to Compl. – ECF No. 1-1 at 23–24.

[16] Email String, Ex. D to Compl. – ECF No. 1-1 at 23–24.

[17] *Id.* at 23.

[18] Compl. – ECF No. 1 at 9 (¶ 35); Email String, Ex. D to Compl. – ECF No. 1-1 at 23. The San Francisco Redevelopment Agency was dissolved on February 1, 2012, under California State Assembly Bill No. 1X26, and the City and County of San Francisco is the successor-in-interest to the Agency's rights and obligations. The Mayor's Office of Housing and Community Development assumed the responsibility for and administration of all housing programs formerly administered by the Agency. Mot. – ECF No. 10 at 6 n.2.

[19] Email String, Ex. D. to Compl. – ECF No. 1-1 at 23.

[20] *Id.* at 22–23.

> BMR 10 months out of each year (12 months). That is, I was requesting permission from the SFRA to travel for periods of time that would be longer than 2 months and she communicated to me that it would be OK for me to do so.
>
> In any case, I would like to travel to Europe for an extended period of time 3, 6, 9, maybe as long as 12 months. And, to be sure, my home at 200 Brannan St. Apt. 316 SF, CA 94107 will remain my permanent and principal [sic] residence.
>
> Thus, I again am requesting permission for a contractual variance to not physically be at my home (again, a BMR) for periods of time longer than 2 months out of each year (12 months).
>
> Please advise.[21]

On March 23, 2016, Mr. Rice forwarded the August 4 email string to Ms. Horner, saying in part that he was an honest person and that she had approved his request to travel for more than two months and to have a roommate.[22] He said that he had recently learned that he needed written permission and asked her to confirm in writing — before he "bother[ed]" the Mayor's Office" — that the Agency had approved his [2008] request for travel and a roommate.[23] Around April 10, 2016, Mr. Rice called Mr. Smith, left a message (presumably about the written consent issue), and asked Mr. Smith to call him back.[24] Mr. Smith never responded.[25]

In 2017, Mr. Rice "began to pursue refinancing his then existing mortgage."[26] Recognizing that he needed written consent for a roommate[27] and the travel, he obtained a letter from his physician, Alison Ludwig, M.D., the Physician Chief at the San Francisco VA Medical Center, to support his request to the Mayor's Office of Housing for "his reasonable and necessary disability related needed accommodation."[28] In a letter to the Mayor's Office of Housing dated September

---

[21] *Id.* at 23.

[22] *Id.* at 22.

[23] *Id.*

[24] Compl. – ECF No. 1 at 11 (¶ 44).

[25] *Id.* (¶ 45).

[26] *Id.* at 12 (¶ 50).

[27] Mr. Rice alleges that he did not have a roommate at this time. *Id.* (¶ 51).

[28] *Id.* (¶¶ 51–52).

ORDER – No. 19-cv-04250-LB                               5

19, 2017, Dr. Ludwig recommended that Mr. Rice be allowed to travel and to have a roommate for his "mental health, and considering his disabled veteran status."[29]

On October 15, 2017, Mr. Rice "entered into a new rental agreement" with a roommate, who agreed to pay $800 a month (plus a $800 security deposit) in a month-to-month lease.[30] He "reasonably believed" that the Mayor's Office of Housing would honor his request for written consent to lease a part of the Property to a roommate.[31]

On October 17, 2017, Sean Fitzgerald at First Republic Bank sent an email to Mr. Rice telling him that because Mr. Rice was renting his apartment, which was not allowed under the Below Market Rate program, the Mayor's Office of Housing had "moved the file to the compliance department and they are no longer underwriting the refinance."[32] Mr. Rice emailed Cissy Yin at the Mayor's Office of Housing on October 19 and 22, 2017, sending the August 4, 2015 and March 23, 2016 emails summarized above, and describing Ms. Horner's verbal approval in 2008 or 2009 of his requests for a roommate and for more-than-two-months-annual travel.[33] He said that the written consent requirement in the Agreement "absolutely escaped my attention and memory."[34] He said that Ms. Horner and Mr. Smith did not respond to his emails, he reasonably relied on Ms. Horner (given his many contacts with her, his principal contact at the Agency) and that his failure to obtain written consent for the travel and roommate was an honest mistake by an honest person, and he asked the Mayor's Office of Housing to honor Ms. Horner's previous verbal permission.[35] He included Dr. Ludwig's September letter recommending that the Mayor's Office of Housing grant his requests for travel and a roommate.[36]

---

[29] Letter, Ex. E to Compl. – ECF No. 1-1 at 25.

[30] Compl. – ECF No. 1 at 13 (¶ 54) & Lease Agreement, Ex. F to Compl. – ECF No. 1-1 at 26–27.

[31] Compl. – ECF No. 1 at 13 (¶ 54).

[32] *Id.* (¶ 55) & Email, Ex. G to Compl. – ECF No. 1-1 at 28.

[33] Compl. – ECF No. 1 at 13 (¶ 56); Email, Ex. H to Compl. – ECF No. 1-1 at 30–32. The email in Exhibit D excerpts the earlier emails, which also are attached to the complaint. *See* Email String, Ex. D to Compl. – ECF No. 1-1 at 21–24.

[34] Email, Ex. H to Compl. – ECF No. 1-1 at 30.

[35] *Id.* at 30–32.

[36] Compl. – ECF No. 1 at 13 (¶ 56).

In a letter dated October 26, 2017, Cissy Yin at the Mayor's Office of Housing responded:

> As a part of the Program, the Agency and you entered into a Declaration of Resale Restrictions and Option to Purchase Agreement ("Declaration of Restrictions") dated September 23, 2004, and recorded on October 25, 2004, as document number 2004-H838555-00. Pursuant to Section 6.1 of the Declaration of Reclarations [sic] [presumably Restrictions], you are required to occupy the Property as your principal residence and prohibited from "leasing the Property, or any portion thereof, without the Agency's prior written consent". It has been brought to MOHCD's attention that you have been leasing out the Property and collecting rents without MOHCD's prior written consent. Although you may have received verbal approval by the Agency to have a roommate, there is no record that the Agency approved you leasing out your Property. This unapproved lease of the Property is a direct violation of the covenants and restrictions in the Delcaration [sic] of Restrictions ("Default") and constitutes an Event of Default as described in Section 11.l(b) of the Declaration of Restrictions.
>
> We have received the September 19, 2017 letter provided by your primary care physician. You may have roommates, without charging rents. You may travel as long as you continue to live in the Property as your primary residence. Primary residence is defined in Section 4 (aa) of the Declaration of Restrictions, which requires you to reside at the Property for at least ten (10) months out of each calendar year. If you plan to travel more than two (2) months out of a calendar year, you are required to first notify MOHCD and submit the supporting travel documents for MOHCD's written approval.
>
> In addition, a temporary lease of the Property will only be granted in circumstances where the household is forced to temporarily relocate due to employment requirements, or where the household is temporarily experiencing financial hardship, both of which must be reviewed and approved by MOHCD in its sole discretion. Furthermore, the total period for which the Property may be leased shall not exceed 12 months pursuant to the MOHCD's current temporary rental policy. In review of your financial documentation on your recent refinance request, you do not appear to qualify for a financial hardship exemption based on your current debt-to-income ratio.
>
> **TO CURE THIS DEFAULT**, you must terminate any lease of the Property, and declare that you will not lease any part of the Property in the future without the prior written consent of MOHCD. Please submit evidence that you have terminated any lease and the notarized declaration to our office by no later than **5:00PM, Thursday, November 2, 2017**. If you have any questions you may contact me [by phone or by email]. . . . If you fail to contact our office by this date, MOHCD may take enforcement action based on rights and remedies available to it under the Declaration of Restrictions.[38]

---

[38] Letter, Ex. I to Compl. – ECF No. 1-1 at 33–34 (emphasis in original). Ms. Yin apparently emailed the letter to Mr. Rice. Compl. – ECF No. 1 at 14 (¶ 57).

ORDER – No. 19-cv-04250-LB        7

Mr. Rice terminated the lease with his roommate and sent a copy of the termination agreement to the Mayor's Office of Housing.[39] On October 27, 2017, he emailed Ms. Yin (cc'ing her colleagues Keith Nagayama and Maria Benjamin and also cc'ing Sean Fitzgerald from First Republic Bank) asking for accommodation for his disability to allow the travel and the roommate.[40] On November 1, 2017, Ms. Yin replied, reiterating the rules of the Below Market Rate Program and stating that the "Americans with Disabilities Act (ADA) is not applicable to this situation."[41] In a letter dated December 4, 2017, Mr. Rice's lawyer asked Ms. Yin to explain the legal basis for her position that the ADA did not apply and that therefore, a reasonable accommodation was not required.[42]

Mr. Rice continued to email and call Ms. Yin and her colleagues in December 2017 and January 2018 and was told that he could have a roommate only if he did not charge rent.[43] Ms. Benjamin said the same thing in a January 23, 2018 call.[44] Ultimately, unable to afford his condominium without a roommate, he sold it and moved to Austin, Texas.[45]

---

[39] Compl. – ECF No. 1 at 14 (¶¶ 58–59) (quoting Decl. of Occupancy and Non-Rental, Ex. J to Compl. – ECF No. 1–1 at 35–38).

[40] Email, Ex. L to Compl. – ECF No. 1-2 at 1. On October 29, 2017, Mr. Rice emailed Ms. Horner about his dispute with the Mayor's Office of Housing and said that he would forward the recent email communications. He received an out-of-office reply and never received any other response. Email, Ex. K to Compl. – ECF No. 1-1 at 39–40.

[41] Compl. – ECF No. 1 at 16 (¶ 71) & Letter, Ex. L to Compl. – ECF No. 1-2 at 2–3.

[42] Letter, Ex. M to Compl. – ECF No. 1-2 at 4–5. In a December 18, 2017 email, Ms. Yin acknowledged receipt of the attorney's letter and said that she had "left a few messages to [sic] your office over the last couple of weeks in an attempt to discuss the case with you." Email, Ex. N to Compl. – ECF No. 1–2 at 6. The attorney forwarded the email to Mr. Rice and said that he never received any calls. *Id.*

[43] Compl. – ECF No. 1 at 17–19 (¶¶ 75–82); *see, e.g.,* Email, Ex. N. to Compl. – ECF No. 1-2 at 7; Email, Ex. O to Compl. – ECF No. 1-2 at 8; Email Regarding Voicemail, Ex. P to Compl. – ECF No. 1-2 at 9; Email, Ex. Q to Compl. – ECF No. 1-2 at 10; Voicemail Transcript, Ex. R to Compl. – ECF No. 1-2 at 11; Call Log, Ex. S to Compl. – ECF No. 1-2 at 12.

[44] Compl. – ECF No. 1 at 18 (¶ 81); *see e.g.* Call Log, Ex. S to Compl. – ECF No. 1-2 at 12.

[45] Compl. – ECF No. 1 at 26 (¶ 117); Grant Deed, Ex. A to Request for Judicial Notice – ECF No. 11. The court takes judicial notice of the public-record grant deed. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). In a December 13, 2017 email to a Program specialist, Mr. Rice said that he was selling the Property "in protest" because the Mayor's Office of Housing "has ignored my disability and denies that the ADA is applicable." Email, Ex. X to Compl. – ECF No. 1-2 at 36.

## 2. Procedural History

On April 25, 2019, Mr. Rice filed his Government Claims Act form.[46] On July 24, 2019, he filed his federal lawsuit, claiming (1) a violation of the FHA, 42 U.S.C. § 3604(f)3)(B), based on the defendants' failure to accommodate his disability by letting him lease the Property to a roommate, (2) a violation of the ADA, 42 U.S.C. § 12101 *et seq.*, on the same ground, and (3) state-law claims for negligence and gross negligence, fraud, and elder abuse.[47] He asked for declaratory relief, injunctive relief in the form of prohibiting discriminatory conduct, and damages as follows: $15,000 for loss of personal property "incurred by logistical limitations in the course of Plaintiff Rice vacating the property," $5,000 in moving costs, economic damages of $250,560 for current and future monetary loss based on his age and projected future housing costs, $2.3 million for (essentially) severe emotional distress, and $23 million in punitive damages.[48] All parties consented to the undersigned's jurisdiction.[49] The CCSF defendants moved to dismiss all claims.[50]

## STANDARD OF REVIEW

### 1. Rule 12(b)(6) Standard for Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

---

[46] Government Claims Act Form, Ex. A to Rothschild Decl. – ECF No. 44.

[47] Compl. – ECF No. 1 at 29–35 (¶¶ 143–184).

[48] *Id.* at 36–39 (¶¶ 185–199).

[49] Consents – ECF Nos. 4, 14, and 18.

[50] Mot. – ECF No. 10; Joinder – ECF No. 17. The individual defendants moved to dismiss only in their official capacity and did not respond to the complaint in their individual capacity on the ground that they were served properly only in their official capacity. Letter – ECF No. 16. The responding defendants nonetheless ask that the court dismiss all claims against them — including claims in their individual capacity — without prejudicing their service argument (especially without requiring them to be served and appear) because the claims fail against them in their individual capacity. Joinder – ECF No. 17 at 2. Under the circumstances, and because all individual defendants consented to the court's jurisdiction, the court decides the motion.

ORDER – No. 19-cv-04250-LB                    9

1   which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A
2   complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the
3   'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic
4   recitation of the elements of a cause of action will not do. Factual allegations must be enough to
5   raise a claim for relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555 (internal
6   citations omitted).

7   To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which
8   when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
9   U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when
10  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
11  defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a
12  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
13  unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are
14  merely consistent with a defendant's liability, it stops short of the line between possibility and
15  plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations
16  omitted).

17  If a court dismisses a complaint, it must give leave to amend unless the "pleading could not
18  possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal.*
19  *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

21  2. **Pro Se Pleadings**

22  "The Supreme Court has instructed the federal courts to liberally construe the inartful pleading
23  of pro se litigants. It is settled that the allegations [in a pro se complaint,] however inartfully
24  pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Eldridge*
25  *v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) (internal citations and quotations omitted); *see*
26  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th
27  Cir. 2000); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404
28  U.S. 519, 520 (1972) (per curiam); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

United States District Court
Northern District of California

## ANALYSIS

The defendants move to dismiss all claims under Rule 12(b)(6). The court grants the motion.

### 1. FHA Claim

Mr. Rice claims disability discrimination in violation of the FHA because the defendants did not allow him to have a roommate (to aid his disability) in his below-market-rate condominium.[51] But the defendants did allow him to have a roommate, just not a paying roommate.[52] Mr. Rice's allegations essentially are that he needed a roommate to afford his condominium.[53] That allegation about resources does not state an FHA claim, even assuming that the CCSF was a housing provider (an issue that the court does not reach on this record and briefing).

To support his claim, Mr. Rice relies on 42 U.S.C. § 3604:

> As made applicable by section 3603 of this title . . . it shall be unlawful—
>
> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
> > (A) that buyer or renter,
> >
> > (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, of made available; or
> >
> > (C) any person associated with that buyer or renter.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>
> > (A) that person; or

---

[51] Compl. – ECF No. 1 at 29–30 (¶ 143–149). Mr. Rice does not raise the travel issues in his claims and discusses only the roommate issue. *Id.* In any event, the CCSF did not deny him the ability to travel more than two months a year. As set forth in Ms. Yin's October 2017 letter, the CCSF required only that he notify the CCSF, provide travel documentation, and obtain approval before traveling more than two months a year. Letter, Ex. I to Compl. – ECF No. 1-1 at 33–34.

[52] Compl. – ECF No. 1 at 15 (¶ 68); *see, e.g.*, Letter, Ex. I to Compl. – ECF No. 1-1 at 33–34; Email, Ex. L to Compl. – ECF No. 1-2 at 2–3 ("As stated in the October 26, 2017 Action Required notice, you may have roommates, without charging rents").

[53] *See* Compl. – ECF No. 1 at 24–25 (¶¶ 109–113).

      (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, of made available; or

      (C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes —

      . . .

      (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. . . .[54]

    A plaintiff can establish an FHA discrimination claim by, among other ways, showing that a defendant has failed to provide reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." *Filho v. Gansen*, Case No. 4:18-cv-00337-KAW, 2018 WL 5291986, at *2 (N.D. Cal. Oct. 19, 2018) (citing *Dubois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). To prevail on an FHA discrimination claim for failure to reasonably accommodate under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) the plaintiff is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to know of the handicap; (3) accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *Id.* at *4 (citing *Dubois*, 453 F.3d at 1179).

    Mr. Rice does not state a claim. The Agency did not deny him the roommate he allegedly needed for his disability.[55] It merely denied him a rent-paying roommate.[56] As the Agency explained, the "rental of such [BMR] units is against the nature of the Program" and "permission to temporarily rent out a BMR unit may only be granted in circumstances . . . [of] financial

---

[54] *Id.* at 29–30 (¶¶ 144–145); Opp. – ECF No. 19 at 11–12 (citing 42 U.S.C. § 3604(f)(1)–(3)).

[55] Compl. – ECF No. 1 at 15 (¶ 68); *see, e.g.,* Letter, Ex. I to Compl – ECF No. 1-1 at 33–34; Email, Ex. L – ECF No. 1-2 at 2–3 ("As stated in the October 26, 2017 Action Required notice, you may have roommates, without charging rents").

[56] Letter, Ex. I to Compl. – ECF No. 1-1 at 33 & Agreement, Ex. B. to Compl. – ECF No. 1–1 at 8.

hardship."[57] The Agency denied Mr. Rice a rent-paying roommate because he did not show that he qualified for a financial hardship exemption.[58] That decision was not an FHA violation.[59]

### 2. ADA Claim

In his ADA claim, Mr. Rice contends that the defendants discriminated against him by denying him a roommate.[60] The issue is whether Mr. Rice plausibly pleads an ADA claim based on the CCSF's denial of his request to have a paying roommate. For the reasons set forth in the previous section, the ADA claim fails too.

### 3. State Claims for Negligence, Fraud, and Elder Abuse

On this record and briefing, the court does not reach the issue of whether Mr. Rice timely filed his Government Claims Act form[61] and instead dismisses the state-law claims for lack of supplemental jurisdiction. 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).[62] This dismissal is without prejudice to Mr. Rice's asserting them in state court (subject to whatever statute-of-limitations defense that the defendants raise there).

---

[57] Email, Ex. L to Compl. – ECF No. 1-2 at 2–3.

[58] Compl. – ECF No. 1 at 18 (¶ 80); Letter, Ex. I to Compl. – ECF No. 1-1 at 34 ("In review of your financial documentation on your recent refinance request, you do not appear to qualify for a financial hardship exemption based on your current debt-to-income ratio."); Email, Ex. L to Compl. – ECF No. 1-2 at 2–3.

[59] The CCSF also alleges that it is not a housing provider because it did not provide housing to Mr. Rice, and he owned and occupied his property at all relevant times. Mot. – ECF No. 10 at 9. Due to the defendants' limited briefing and this case involving a pro se litigant, the court does not reach the argument (although it may be correct).

[60] Compl. – ECF No. 1 at 30–31 (¶¶ 150–154).

[61] Mot. – ECF No. 10 at 12.

[62] Mr. Rice references federal statutes in his complaint in support of his fraud claim. Compl – ECF No. 1 at 33–35 (¶¶ 166–179) (citing 18 U.S.C. §§ 241, 242, 1001, & 1018). These federal criminal statutes do not create private causes of action. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Sepehry-Fard v. Bank of N.Y. Mellon*, N.A., No. 12-cv-1260-LHK, 2012 WL 4717870, at *4 (N.D. Cal. Oct. 2, 2012). Mr. Rice in any event characterizes his fraud claim as a state claim. Opp. – ECF No. 19 at 16 (¶ 61).

# CONCLUSION

The court grants the defendants' motion to dismiss. Mr. Rice may file an amended complaint by November 4, 2019 if he can cure the deficiencies in the complaint that the court has identified. Mr. Rice also may voluntarily dismiss his case by filing a one-page notice of dismissal, which will operate as a dismissal without prejudice, thereby allowing him to file any complaint in state court that is not time-barred.

**IT IS SO ORDERED.**

Dated: October 19, 2019

_____
LAUREL BEELER
United States Magistrate Judge