UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALLISON BARTON RICE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-04250-LB<br><br>**ORDER DENYING THE CCSF SUMMARY JUDGMENT, GRANTING SUMMARY JUDGMENT TO THE INDIVIDUAL DEFENDANTS, AND GRANTING THE PLAINTIFF JUDGMENT ON THE PLEADINGS FOR FOUR DEFENSES**<br><br>Re: ECF Nos. 132, 135 |

### INTRODUCTION

The narrow issue at summary judgment is whether there are triable issues of fact about whether the City and County of San Francisco (CCSF) violated the Fair Housing Act when it denied the plaintiff's request to have a rent-paying roommate in his below-market-rate condominium. The purchase agreement allowed leasing only with the CCSF's written permission. The CCSF denied him permission. Triable issues of fact exist about whether the CCSF understood the request to be for a paying roommate and whether the accommodation was necessary or reasonable. The court denies the CCSF summary judgment (but grants the unopposed motion for summary judgment in favor of the individual defendants).

The court also grants the plaintiff's motion for judgment on the pleadings on the CCSF's equitable defenses of good faith, unclean hands, proper conduct, and acting in good faith.

ORDER – No. 19-cv-04250-LB

STATEMENT

## 1. The Denial of a Rent-Paying Roommate

The plaintiff bought a below-market-rate condominium in San Francisco in 2004 through a program administered by the San Francisco Redevelopment Agency. The purchase agreement contained the terms of purchase and restrictions, including a requirement that he could not lease any part of the condominium without the agency's written consent.[1] From 2004 until 2009, the plaintiff — a former Naval Service member who has been diagnosed with a one-hundred-percent disability rating for his service-connected depression and paranoid schizophrenia — lived there alone.[2] He was "overwhelmingly lonely" and "felt that having a roommate would be good for his psychological well-being." "[H]e came to this conclusion because, in the past, it had a significant positive impact on his mental health and interpersonal skills."[3]

Because he wanted a roommate to help him maintain his mental health, in late 2008 or early 2009, the plaintiff called Edith Horner, an employee of the San Francisco Redevelopment Agency, who told him over the phone — but not in writing — that he could have a roommate. He did not ask her whether he could charge the roommate rent "because he believed that [rent] was inherent in the definition of the word [roommate]" and below-market-rate homeowners need to obtain permission for a roommate only when that roommate will be paying rent.[4] As part of that process, he told Ms. Horner and her supervisor David Sobel that he wanted to divide the one bedroom into two, and after they told him that it was "copacetic," he secured the necessary approval from the building department and finished the partition in August 2009.[5]

---

[1] Letter from C. Yin to A. Rice, Ex. 12 to Fisher Decl. – ECF No. 145-13 at 2; Condominium Agreement, Ex. 4 to Fisher Decl. – ECF No. 145-5 at 6 (§ 6.1). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and, for depositions, to the page and line numbers.

[2] Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 7–8; Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 9–10 (¶ 33).

[3] Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 9–10 (¶ 33).

[4] Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 8; Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 3–4 (pp. 155:22–158:10).

[5] Rice Dep., Ex. A to Murphy Decl. – ECF No. 133-3 at 5 (pp. 69:1–71:10), 6 (p. 73:2–21), 8 (p. 94:9–14); Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 9–10 (¶ 33).

In September 2009, the plaintiff's first rent-paying roommate moved in.[6] From then until October 31, 2017, the plaintiff had rent-paying roommates most of the time.[7]

In March 2016, he reviewed his condominium agreement and realized that it required written consent to lease any portion of the condominium. He tried to obtain written consent that month: he emailed Ms. Horner explaining the issue and asking for written confirmation, but she did not respond. In September 2017, his primary-care physician at the VA (Dr. Alison Ludwig) sent a letter to the agency recommending approval of his request for a roommate.[8] (In her deposition, Dr. Ludwig testified that by "roommate," she meant a rent-paying roommate.[9]) On October 19 and 22, 2017, the plaintiff emailed Sandra Gates-Anderson and Cissy Yin at the agency, included his earlier emails and Dr. Ludwig's letter, and described Ms. Horner's earlier verbal approval (in 2008 or 2009) of his request for a roommate.[10] In the October 22 email, he said that the written-consent requirement in the Agreement "absolutely escaped [his] attention and memory," the agency did not respond to his prior emails, he reasonably relied on Ms. Horner (given his many contacts with her, his principal contact at the agency), and his failure to obtain written consent for the roommate was an honest mistake by an honest person. He asked the agency to honor Ms. Horner's previous verbal permission.[11] Ms. Gates-Anderson responded that the information had been forwarded to the agency's compliance department because "they now have the file."[12]

On October 26, 2017, Ms. Yin responded in a letter as follows:

> As a part of the Program, the Agency and you entered into a Declaration of Resale Restrictions and Option to Purchase Agreement ("Declaration of Restrictions")

---

[6] Rice Dep., Ex. A to Murphy Decl. – ECF No. 133-3 at 8 (pp. 94:15–95:4).

[7] Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 34–35.

[8] *Id.* at 8; Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 4–6 (pp. 158:11–167:1); Email String, Ex. O to Murphy Decl. – ECF No. 132-16 at 3; Letter from A. Ludwig, Ex. P to Murphy Decl. – ECF No. 132-17.

[9] Ludwig Dep., Ex. F to Murphy Decl. – ECF No. 133-5 at 5 (p. 60:7–13); Ludwig Dep., Ex. 11 to Fisher Decl. – ECF No. 144-6 at 4 (pp. 54:19–55:11).

[10] Email String, Ex. 7 to Fisher Decl. – ECF No. 145-8; Email String, Ex. 8 to Fisher Decl. – ECF No. 145-9 at 12–17.

[11] Email String, Ex. 8 to Fisher Decl. – ECF No. 145-9 at 12–17.

[12] Email String, Ex. 7 to Fisher Decl. – ECF No. 145-8 at 2.

dated September 23, 2004, and recorded on October 25, 2004, as document number 2004-H838555-00. Pursuant to Section 6.1 of the Declaration of [Restrictions], you are required to occupy the Property as your principal residence and prohibited from "leasing the Property, or any portion thereof, without the Agency's prior written consent". It has been brought to MOHCD's attention that you have been leasing out the Property and collecting rents without MOHCD's prior written consent. Although you may have received verbal approval by the Agency to have a roommate, there is no record that the Agency approved you leasing out your Property. This unapproved lease of the Property is a direct violation of the covenants and restrictions in the [Declaration] of Restrictions ("Default") and constitutes an Event of Default as described in Section 11.l(b) of the Declaration of Restrictions.

We have received the September 19, 2017 letter provided by your primary care physician. You may have roommates, without charging rents. You may travel as long as you continue to live in the Property as your primary residence. Primary residence is defined in Section 4 (aa) of the Declaration of Restrictions, which requires you to reside at the Property for at least ten (10) months out of each calendar year. If you plan to travel more than two (2) months out of a calendar year, you are required to first notify MOHCD and submit the supporting travel documents for MOHCD's written approval.

In addition, a temporary lease of the Property will only be granted in circumstances where the household is forced to temporarily relocate due to employment requirements, or where the household is temporarily experiencing financial hardship, both of which must be reviewed and approved by MOHCD in its sole discretion. Furthermore, the total period for which the Property may be leased shall not exceed 12 months pursuant to the MOHCD's current temporary rental policy. In review of your financial documentation on your recent refinance request, you do not appear to qualify for a financial hardship exemption based on your current debt-to-income ratio.

**TO CURE THIS DEFAULT**, you must terminate any lease of the Property, and declare that you will not lease any part of the Property in the future without the prior written consent of MOHCD. Please submit evidence that you have terminated any lease and the notarized declaration to our office by no later than **5:00PM, Thursday, November 2, 2017**. If you have any questions, you may contact me [by phone or by email]. . . . If you fail to contact our office by this date, MOHCD may take enforcement action based on rights and remedies available to it under the Declaration of Restrictions.[13]

The plaintiff responded by email that day to Ms. Yin (and cc'ing her colleagues Keith Nagayama and Maria Benjamin and Sean Fitzgerald at First Republic Bank) asking for an

---

[13] Email String, Ex. 8 to Fisher Decl. – ECF No. 145-9 at 10 (cover email); Letter, Ex. 12 to Fisher Decl. – ECF No. 145-13.

accommodation for his disability in the form of a rent-paying roommate.[14] On November 1, 2017, Ms. Yin replied, reiterating the rules of the below-market-rate program and saying, "The Americans with Disabilities Act (ADA) is not applicable to this situation."[15] Also on November 1, 2017, the plaintiff terminated the lease with his then-current roommate and sent a copy of the termination agreement to the agency.[16] The agency deemed that response sufficient to cure the default.[17]

In response to the agency's October 26, 2017 letter, the plaintiff asked his then-current roommate if she would continue living with him without paying rent, but did not otherwise seek a roommate who would not pay rent.[18] Over the five months following the letter, he continued to email and call Ms. Yin and Ms. Benjamin, asking for an accommodation in the form of a rent-paying roommate. He again was told that he could have a roommate who did not pay rent or, if he qualified for a temporary financial hardship, a rent-paying roommate.[19]

The agency's employees never asked the plaintiff why he needed a rent-paying roommate to help with his disabilities, and they did not respond to his requests for an in-person meeting.[20] Ms. Yin testified that when a program beneficiary requests a disability accommodation, the agency relies on the beneficiary to describe the disability.[21] Also, Ms. Benjamin testified that during this time, she had a conversation with the plaintiff in which she told him he could have a roommate

---

[14] Email String, Ex. 8 to Fisher Decl. – ECF No. 145-9 at 7–9.

[15] *Id.* at 5–7.

[16] *Id.* at 5.

[17] *Id.* at 3.

[18] Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 11 (pp. 233:1–235:16).

[19] *Id.* at 12–13 (pp. 239:2–10, 240:1–41:6); Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 5–6 (pp. 56:25–57:9, 59:13–17); Benjamin Dep., Ex. 15 to Fisher Decl. – ECF No. 145-16 at 6 (p. 75:11–20); Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 9; Email String, Ex. 8 to Fisher Decl. – ECF No. 145-9 at 2–3; Emails, Ex. 18 to Fisher Decl. – ECF No. 145-19.

[20] Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 7 (pp. 180:4–182:1), 13 (pp. 240:1–241:6); Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 5–6 (pp. 55:22–57:9, 59:13–25); Benjamin Dep., Ex. 15 to Fisher Decl. – ECF No. 145-16 at 6 (pp. 73:23–74:3, 75:11–20).

[21] Yin Dep., Ex. E to Murphy Decl. – ECF No. 132-6 at 4 (p. 31:20–24).

who contributed financially other than by paying rent, such as by paying for groceries and utilities.[22] The plaintiff testified that this phone call was "extraordinarily unproductive."[23]

On December 13, 2017, the plaintiff informed Ms. Yin that he intended to sell his condominium "'under protest,' primarily because the [agency] . . . ignored [his] disability and denie[d] that the ADA is applicable."[24] Another reason he intended to move was to find a place he could afford. Ultimately, in May 2018, he sold the condominium and moved to Austin, Texas.[25]

Also in May 2018, the plaintiff submitted a complaint about the agency's alleged disability discrimination to the San Francisco office of the federal Department of Housing and Urban Development (HUD). HUD closed the file after concluding that the "federal fair housing laws do not cover the . . . bases of the alleged discrimination" because the plaintiff's medical documentation did not establish "a disability related need to rent [his] home to roommates." The San Francisco HUD office's closure letter stated that the office's decision "does not represent a judgment upon the merits of the allegations" and that the plaintiff could still "file a civil action in an appropriate United States District Court."[26] The plaintiff then asked HUD's central office in Washington, D.C., to overturn that decision, but it declined.[27]

### 2. The Plaintiff's Need for a Rent-Paying Roommate

The plaintiff provided information about his disability and his need for a rent-paying roommate.

As described above, the plaintiff has a one-hundred-percent disability rating for his service-connected depression and paranoid schizophrenia. The summary-judgment record establishes

---

[22] Benjamin Dep., Ex. C to Murphy Decl. – ECF No. 132-4 at 10–11 (pp. 76:22–77:16).

[23] Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 7 (pp. 180:24–181:14).

[24] Email String, Ex. V to Murphy Decl. – ECF No. 132-23.

[25] Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-3 at 7 (pp. 89:19–90:6); Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 6, 9.

[26] HUD Compl., Ex. T to Murphy Decl. – ECF No. 132-21; S.F. HUD Decision Letter, Ex. S to Murphy Decl. – ECF No. 132-20; S.F. HUD Closure Letter, Ex. U to Murphy Decl. – ECF No. 132-22.

[27] D.C. HUD Decision Letter, Ex. R to Murphy Decl. – ECF No. 132-19.

childhood trauma and his struggles since, including his foundational feelings of loneliness and isolation.[28] "When he is alone, his mental health deteriorates," and "[i]t becomes near impossible for [him] to perform the normal functions of daily life." But being with others alleviates the symptoms. And having a roommate "help[s] . . . treat the symptoms of his disabilities." He wants a roommate who is an "equal partner:" "it [is] important that a roommate contribute to the maintenance of the home, both administratively and financially." He has tried living with a roommate who did not pay rent, but "in each case, the living arrangement was not helpful." "The relationship would deteriorate, and [the] [p]laintiff's symptoms . . . were exacerbated, including his irritability and paranoid thoughts regarding others' intentions."[29]

Dr. Ludwig testified that a roommate who did not pay rent "would actually take away some of the mental health benefits" to the plaintiff of having a roommate.[30] The plaintiff's expert, Dr. Scott Lines, opined that a roommate who did not pay rent "would not have had the same beneficial therapeutic effect" on the plaintiff and "would have exacerbated the symptoms of [his] depressive disorder by diminishing his self-esteem and feelings of self-worth."[31]

Dr. Ludwig testified that it "seems like" a roommate who paid for all utilities would have "the same mental health benefit" for the plaintiff as one who contributed to the rent. As for a roommate who paid for all groceries, Dr. Ludwig testified that the mental-health benefit to the plaintiff would depend on the plaintiff's "interpretation" of that scenario.[32] In his report, Dr. Lines used the word "roommate" in the sense of "an individual who cohabitates a living space with another

---

[28] For HIPPA and privacy reasons, the order does not recite the evidence, but the opposition summarizes and cites the evidence in a sealed section. Opp'n – ECF No. 144-2 at 5–6.

[29] Pl.'s Resps. to Defs.' 1st Set of Interrogs., Ex. 2 to Fisher Decl. – ECF No. 145-3 at 7–8, 14; Rice Dep., Ex. 5 to Fisher Decl. – ECF No. 144-5 at 7–8 (pp. 229:19–233:24).

[30] Ludwig Dep., Ex. 11 to Fisher Decl. – ECF No. 144-6 at 7 (pp. 90:22–91:10).

[31] Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 18–19 (¶ 62).

[32] Ludwig Dep., Ex. 11 to Fisher Decl. – ECF No. 144-6 at 4 (p. 56:7–25).

person, and who contributes to the financial cost of maintaining the home."[33] He testified that a financial contribution means an equitable contribution.[34]

### 3. The Below-Market-Rate Program

The CCSF offered evidence about the below-market-rate program.

"The purpose of the [below-market-rate program] is to provide [below-market-rate] homeownership opportunities to low- and moderate-income households." "The [p]rogram's long-term sustainability requires restrictions on resale prices" so that "homes can be sold at affordable prices again and again."[35] Mr. Sobel testified that "[t]he resale price is set according to a formula" that does not take into account any rental income received by the selling beneficiary.[36]

The rental restriction in the below-market-rate program exists because "[below-market-rate] homes are a valuable and scarce community resource." "One of [the] fundamental principles in providing affordable housing is that the beneficiary not profit off of the public benefit."[37] Ms. Benjamin testified that "throughout all affordable housing programs, not only in San Francisco but [also] across the country[,] . . . there are prohibitions on gaining income from an affordable housing public interest."[38] Thus, beneficiaries are told multiple times that they cannot rent out any portion of their property.[39] The only exception is when written consent to the lease is provided in the case of a beneficiary's temporary financial hardship.[40]

---

[33] Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 5 (¶ 9 n.1).

[34] Lines Dep., Ex. G to Murphy Decl. – ECF No. 133-6 at 4–5 (pp. 80:5–83:23).

[35] Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 4–5.

[36] Sobel Dep., Ex. 6 to Fisher Decl. – ECF No. 145-7 at 4 (pp. 91:10–92:13).

[37] Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 5; Condominium Agreement, Ex. Q to Murphy Decl. – ECF No. 132-18 at 2 (§ 2); Benjamin Dep., Ex. C to Murphy Decl. – ECF No. 132-4 at 9 (pp. 71:23–72:22); Yin Dep., Ex. E to Murphy Decl. – ECF No. 132-6 at 5 (pp. 45:24–46:11).

[38] Benjamin Dep., Ex. C to Murphy Decl. – ECF No. 132-4 at 3 (p. 36:10–22).

[39] Sobel Dep., Ex. D to Murphy Decl. – ECF No. 132-5 at 5 (pp. 30:4–32:3); Yin Dep., Ex. E to Murphy Decl. – ECF No. 132-6 at 8 (p. 73:9–16).

[40] Benjamin Dep., Ex. C to Murphy Decl. – ECF No. 132-4 at 5–6 (pp. 44:19–45:3); Yin Dep., Ex. E to Murphy Decl. – ECF No. 132-6 at 9 (p. 81:5–8); Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 5.

There are administrative and financial burdens associated with permitting rentals. Mr. Sobel testified that there could be issues with a resale if a program beneficiary had a tenant at the time of resale: for example, the tenant might damage the property or have rights that might encumber the property.[41] Ms. Benjamin testified that there are administrative burdens with monitoring the selection of the tenant and the duration of the lease and a financial burden from the resulting need for increased staffing.[42] She said that the financial burden would be different in scale if one beneficiary was allowed a rental versus "ten of them."[43] Ms. Yin testified that burden was not a factor in the decision to deny the plaintiff's request for a rent-paying roommate: the only factor was that the request was inconsistent with the nature of the below-market-rate program.[44] She also testified that the agency has a process in place for managing temporary rentals by program beneficiaries.[45]

### 4. Relevant Procedural History

The court previously dismissed all claims in the FAC.[46] The plaintiff — who was representing himself at the time — appealed.[47] The Ninth Circuit generally affirmed the dismissal except for the dismissal of the Fair Housing Act claim: it held that, liberally construed, the plaintiff alleged that his requested accommodation of a rent-paying roommate was reasonable and necessary to accommodate his mental-health disability and that the CCSF failed to provide a reasonable

---

[41] Sobel Dep., Ex. D to Murphy Decl. – ECF No. 132-5 at 10 (pp. 94:3–95:23); Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 5.

[42] Benjamin Dep., Ex. C to Murphy Decl. – ECF No. 132-4 at 6 (pp. 47:14–48:11); Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 5.

[43] Benjamin Dep., Ex. 15 to Fisher Decl. – ECF No. 145-16 at 4–5 (pp. 48:19–49:3).

[44] Yin Dep., Ex. E to Murphy Decl. – ECF No. 132-6 at 5 (pp. 45:24–46:11), 6 (p. 65:1–8); Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 3–4 (pp. 48:23–49:7).

[45] Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 8 (pp. 81:9–82:4).

[46] Order – ECF No. 58.

[47] Notice of Appeal – ECF No. 61.

accommodation for his disability when it refused to grant an exception to the agreement to permit him a rent-paying roommate. It remanded on this ground.[48]

All parties consented to magistrate-judge jurisdiction.[49] The court held a hearing on December 22, 2022.

**STANDARDS OF REVIEW**

**1. Summary Judgment — Rule 56**

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

---

[48] *Rice v. City & Cnty. of San Francisco*, No. 20-15017, Mem. Op. – ECF No. 63.

[49] Consents – ECF Nos. 4, 14, and 18.

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial.") *Devereaux*, 263 F.3d at 1076 (cleaned up).

"Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up) (quoting *Celotex*, 477 U.S. at 322–23). If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

### 2. Judgment on the Pleadings — Rule 12(c)

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the

pleadings is proper if, taking all of [the plaintiff]'s allegations in its pleadings as true, [the defendant] is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010) (Smith, J., dissenting) (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

**ANALYSIS**

An issue is whether summary judgment should be granted in favor of the individual defendants. In his opposition, the plaintiff did not oppose summary judgment.[50] The individual defendants are in any event redundant, and the court grants summary judgment to them. *See, e.g., Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.").

There are three remaining issues: (1) whether the CCSF failed to accommodate the plaintiff, in violation of the Fair Housing Act, 42 U.S.C. § 3604; (2) whether the CCSF unlawfully interfered with the plaintiff's rights under the Fair Housing Act, *id.* § 3617; and (3) whether the court should grant judgment in favor of the CCSF on the equitable defenses.

**1. Failure to Accommodate — Fair Housing Act, 42 U.S.C. § 2604**

A municipality discriminates under the Fair Housing Act if it refuses to make reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *Budnick v. Town of Carefree*, 518 F.3d 1109, 1119 (9th Cir. 2008). To establish a claim of discrimination on a theory of failure to reasonably accommodate under § 3604(f)(3), a plaintiff must demonstrate that (1) he is handicapped as defined by § 3602(h), (2) the defendant knew or reasonably should have known about the handicap, (3) accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the

---

[50] *See generally* Opp'n to Mot. for Summ. J. – ECF No. 145.

ORDER – No. 19-cv-04250-LB          12

dwelling, (4) the accommodation is reasonable, and (5) the defendant refused to make the requested accommodation. *Budnick*, 518 F.3d at 1119; *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). "To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (cleaned up). "Put another way, without a causal link between [the] defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation." *Id.* (cleaned up).

The CCSF moved for summary judgment on the grounds that it granted the plaintiff's request for accommodation in the form of a roommate (albeit not a rent-paying roommate), a rent-paying roommate was not necessary as a matter of law, and a rent-paying roommate was not reasonable as a matter of law.[51] Genuine disputes of material fact preclude summary judgment.

First, the CCSF contends that it granted the accommodation because the plaintiff asked for a roommate and the CCSF was not "on notice that [he] required a rent-paying roommate."[52] As the plaintiff counters, it is at least in dispute whether the agency knew that he was asking for a rent-paying roommate.[53] Moreover, he asked for confirmation in writing, explaining that he had reviewed his condominium agreement and realized that it required written consent to lease any portion of the condo.[54] And multiple CCSF employees testified that they knew the plaintiff was requesting a rent-paying roommate.[55]

Second, the CCSF contends that as a matter of law, a rent-paying roommate was not a necessary accommodation because "[n]o treating doctor has ever told [the plaintiff] it was

---

[51] Mot. for Summ. J. – ECF No. 132 at 16–22.

[52] *Id.* at 17–18.

[53] Opp'n to Mot. for Summ. J. – ECF No. 145 at 10–12.

[54] Condominium Agreement, Ex. 4 to Fisher Decl. – ECF No. 145-5 at 6 (§ 6.1); Email String, Ex. O to Murphy Decl. – ECF No. 132-16 at 3; Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 4 (pp. 158:11–159:25), 12 (p. 239:2–21).

[55] Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 5–6 (pp. 56:25–57:9, 59:13–17); Benjamin Dep., Ex. 15 to Fisher Decl. – ECF No. 145-16 at 6 (p. 75:11–20).

important for his mental health that he have a roommate who pays rent," he lived alone in the condominium from 2004 to 2009, and he did not explore the possibility of his roommate's paying for groceries and utilities rather than rent.[56] These points are disputed too. There is evidence in the record that the plaintiff explained to agency personnel that he needed a rent-paying roommate.[57] His primary-care physician and his expert opined that a rent-paying roommate was necessary.[58] *Yellowstone Womens First Step House, Inc. v. City of Costa Mesa*, No. SACV 14-01852 JVS (JCGx), 2018 WL 6164307, at *11 (C.D. Cal. July 13, 2018) (genuine dispute of material fact on the necessity issue where the plaintiff "present[ed] evidence showing that . . . residents received therapeutic benefits from" the requested accommodation). The record also has evidence about the plaintiff's realization of his need for a roommate, which at least is a fact that counters the contention that he lived alone previously. And it is disputed whether there was an interactive process to explore an accommodation in the form of other ways a roommate could contribute financially: the plaintiff characterizes the conversations with the agency as unproductive.

On this last point, the CCSF's citation in its reply brief to *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112–13 (3d Cir. 2018), does not change the outcome.[59] The plaintiff there asked to leave her walker in her apartment building's lobby to meet her medical need (established by her doctor's letters) to use the walker to get from the lobby to her apartment. *Id.* at 103–04. The defendant offered four alternatives for ready access to the walker; the plaintiff rejected them because she wanted to get the walker herself in the lobby. *Id.* The court held that the plaintiff did not plausibly plead that her requested accommodation was necessary given the

---

[56] Mot. for Summ. J. – ECF No. 132 at 18–19.

[57] Rice Dep., Ex. B to Murphy Decl. – ECF No. 133-4 at 12 (p. 239:2–7). As to any argument that the statement to the expert is inadmissible hearsay, the point is covered generally by the deposition testimony. Also, the court can consider it at summary judgment if the underlying evidence "could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003)); *see Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991).

[58] Ludwig Dep., Ex. 11 to Fisher Decl. – ECF No. 144-6 at 7 (pp. 90:22–91:10); Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 9 (¶ 33), 18–19 (¶ 62).

[59] Reply in Supp. of Mot. for Summ. J. – ECF No. 149 at 7–10.

accommodations that were offered: the Fair Housing Act's "necessity element requires that an accommodation be essential, not just preferable." *Id.* at 105–07, 112–13.

The accommodations here are not equivalent in the way they were in *Vorchheimer*: it is at least disputed that a roommate who pays for food and utilities is equivalent to a roommate who shares the financial burden, given the expert's opinion that a roommate with an unequal contribution would "exacerbate[]" the plaintiff's symptoms.[60] Also, the Third Circuit's recitation of the "essential" standard differs from the Ninth Circuit's characterization: "plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Giebeler*, 343 F.3d at 1155 (cleaned up); *see also Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 805 (9th Cir. 2012) (under the Fair Housing Act, a plaintiff must show that the "accommodation 'may be necessary'").

Third, the CCSF contends that a rent-paying roommate was not a reasonable accommodation because permitting beneficiaries of the below-market-rate program to rent portions of their homes would fundamentally alter the nature of the program and impose administrative and financial burdens on the CCSF.[61]

Under the Fair Housing Act, "[t]he reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994). An accommodation is reasonable when it does not impose any (1) "fundamental alteration in the nature of the program" or (2) "undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157 (cleaned up); *Wolf v. City of Millbrae*, No. 21-cv-00967-PJH, 2021 WL 3727072, at *4 (N.D. Cal. Aug. 23, 2021).

"[W]here a rule is peripheral to the nature of [the] defendants' activities, 'it may be waived in individual cases without working a fundamental alteration.'" *Giebeler*, 343 F.3d at 1157 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001)). As to burden, policies are not unreasonable "simply because they . . . may involve a risk of some financial cost to the landlord." *Id.* at 1153.

---

[60] Lines Report, Ex. 3 to Fisher Decl. – ECF No. 144-4 at 5 (¶ 9 n.1), 18–19 (¶ 62); Lines Dep., Ex. G to Murphy Decl. – ECF No. 133-6 at 4–5 (pp. 80:5–83:23).

[61] Mot. for Summ. J. – ECF No. 132 at 19–22.

ORDER – No. 19-cv-04250-LB  15

And where the defendant "ha[s] on occasion waived" the policy and allowed "alternative arrangements," the burden associated with an individual exception may not be enough to make the accommodation unreasonable. *Id.* at 1158 (reversing summary judgment); *see U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 405–06 (2002) (although "in the ordinary [ADA] case" an exception to a seniority system is unreasonable, "[t]he plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter").

Again, there are genuine disputes of material fact that preclude summary judgment. Regarding burden, a CCSF employee testified that the CCSF already has a process in place for managing temporary rentals by beneficiaries of the below-market-rate program.[62] In other words, the program has built-in exceptions similar to that requested by the plaintiff. The court thus cannot say as a matter of law that one more exception would be unreasonable. *Giebeler*, 343 F.3d at 1158; *U.S. Airways*, 535 U.S. at 405–06.

There also is a genuine dispute about whether the below-market-rate program's anti-rental rule is "peripheral to the nature of" the program. *Giebeler*, 343 F.3d at 1157. The CCSF admits that the purpose of the program is to maintain a stable supply of affordable housing in the city by keeping rates for the housing included in the program at below-market levels each time program beneficiaries resell.[63] And a CCSF employee testified that "[t]he resale price is set according to a formula" that does not take into account any rental income received by the selling beneficiary.[64] Thus, allowing some disabled tenants a rent-paying roommate would not affect resale prices. A reasonable jury therefore could find that the program would not be fundamentally altered by rentals. *See id.* (at the summary-judgment stage, an accommodation to a allow a cosigner on a tenancy did not "unreasonably threaten" the purpose of a minimum-income tenancy requirement where there would still be prompt and consistent payment); *see also Yellowstone Womens First Step House*, 2018 WL 6164307, at *12 (where the requested accommodation was actually in effect

---

[62] Yin Dep., Ex. 13 to Fisher Decl. – ECF No. 145-14 at 8 (pp. 81:9–82:4).

[63] Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 4–5.

[64] Sobel Dep., Ex. 6 to Fisher Decl. – ECF No. 145-7 at 4 (pp. 91:10–92:13).

for years before the request, there was "a genuine dispute as to whether [it] would change the fundamental nature of the [c]ity's" rule to the contrary).

The CCSF points out that having tenants could encumber property and therefore affect resales.[65] There is still a fact dispute about whether allowing rent-paying tenants would change the fundamental nature of the below-market-rate program, given the CCSF's admission that resale prices would not be affected and the existence of an established process for allowing rent-paying roommates.

In sum, the court denies summary judgment on the § 3604 claim.

### 2. Interference — Fair Housing Act, 42 U.S.C. § 3617

The next issue is whether the CCSF interfered with the plaintiff's rights under § 3617.[66]

The Fair Housing Act makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by" the Act. 42 U.S.C. § 3617. "Interference" refers to "practices [that] have the effect of interfering with the exercise of rights under the federal fair housing laws." *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (cleaned up). The term encompasses a housing provider's issuing a notice to quit or to cure a default or quit in response to a plaintiff's accommodation request. *Galia v. Wasatch Advantage Grp. LLC*, No. 19-cv-08156-JCS, 2021 WL 1516372, at *5 (N.D. Cal. Apr. 16, 2021) (collecting cases).

There is, again, at least a genuine factual dispute here. The agency's August 26, 2017, letter to the plaintiff, which was in response to the plaintiff's accommodation request, warned that the CCSF "may take enforcement action based on rights and remedies available to it" if the plaintiff did not cure his default.[67] The court denies summary judgment on the § 3617 claim. *See, e.g.*,

---

[65] Mot. for Summ. J. – ECF No. 132 at 22; Sobel Dep., Ex. D to Murphy Decl. – ECF No. 132-5 at 10 (pp. 94:3–95:23); Defs.' Am. Resps. to Pl.'s 1st Set of Interrogs., Ex. J to Murphy Decl. – ECF No. 132-11 at 5.

[66] Mot. for Summ. J. – ECF No. 132 at 22–24.

[67] Letter, Ex. 12 to Fisher Decl. – ECF No. 145-13.

*Smith v. Powdrill*, No. CV 12-06388 DDP RZX, 2013 WL 5786586, at *10 (C.D. Cal. Oct. 28, 2013) (granting summary judgment to the plaintiff where the defendants "respond[ed] to [the] [p]laintiff's request for an accommodation for her disability by issuing her a 3-[d]ay [n]otice, and subsequently reiterating that they wanted [her] out of the apartment if she insisted on keeping the companion animal").

### 3. The CCSF's Equitable Defenses

The parties dispute whether judgment is appropriate on four affirmative defenses: good faith, unclean hands, proper conduct, and acting in good faith.[68] The plaintiff contends that they are not relevant to his claims.[69] The CCSF counters that the defenses apply at least to remedies and also to liability.[70]

The court grants the motion. The equitable defenses are not valid defenses to liability under the Fair Housing Act. *Hernandez v. Cnty. of Monterey*, 306 F.R.D. 279, 283 (N.D. Cal. 2015) (affirmative defenses are about liability); *Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 636–37 (N.D. Cal. 2010) (unclean-hands defense not available under the Act because it "has not been applied where Congress authorizes broad equitable relief to serve important national policies") (quoting *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995)). That said, the parties' relative conduct can be considered in evaluating any equitable remedies. *McKennon*, 513 U.S. at 360–61 (even where the unclean-hands defense is not available under a statute, "[t]hat does not mean . . . [that] the [plaintiff]'s own misconduct is irrelevant to all the remedies otherwise available under the statute").

---

[68] Opp'n to Mot. for J. on the Pleadings – ECF No. 142 at 6; Answer – ECF No. 76 at 17.
[69] Mot. for J. on the Pleadings – ECF No. 135 at 8–9.
[70] Opp'n to Mot. for J. on the Pleadings – ECF No. 142 at 6, 10.

# CONCLUSION

The court grants summary judgment in favor of the individual defendants but denies the CCSF summary judgment. The court grants judgment on the pleadings to the plaintiff on the four equitable defenses on the ground that they are irrelevant to liability.

This disposes of ECF Nos. 132 and 135.

**IT IS SO ORDERED.**

Dated: January 13, 2023

LAUREL BEELER
United States Magistrate Judge