UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ALLISON BARTON RICE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　　Defendant. | Case No. 19-cv-04250-LB<br><br>**FINAL PRETRIAL ORDER**<br><br>Re: ECF No. 182 |

The court held a pretrial conference on May 25, 2023. The court issues this pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

**1. Trial Date and Length of Trial**

The jury trial will begin on Friday, June 16, 2023, in Courtroom D, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California.

The trial will last up to four days. Generally, the trial day will run from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a witness) and will include two fifteen-minute breaks. But on June 20 and 21, the trial day will run from 8:30 a.m. to 5:00 p.m., with three fifteen-minute breaks and a thirty-minute break for lunch. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past 2:00 p.m.

ORDER – No. 19-cv-04250-LB

Each party will have up to eight hours per side for opening statements, closing arguments (including rebuttal closing for the plaintiff), direct examination of witnesses, and cross examination of the other side's witnesses, including all objections raised during the trial day.

## 2. Procedures During Trial; Exhibit and Witness Lists; Witnesses

The court's September 20, 2021, Case-Management and Pretrial Order has the court's trial procedures for the presentation of exhibits, depositions, and witness testimony, including specific procedures for deposition excerpts.[1]

The parties have identified their witnesses on their separate witness lists. As discussed at the pretrial conference, if the parties identify the same witnesses, the defendant will examine the witness when the plaintiff calls them (as opposed to recalling them).

## 3. Claims, Defenses, and Relief Sought

The plaintiff has two claims predicated on violations of the Fair Housing Act: (1) denying him the reasonable accommodation of a rent-paying roommate, in violation of 42 U.S.C. § 3604, and (2) interfering with his exercise of his rights under § 3604, in violation of 42 U.S.C. § 3617.

The parties' positions (claims, defenses, and relief sought) are reflected in their joint proposed pretrial order at ECF No. 182.

## 4. Stipulations

The parties have stipulated to the authenticity and chain of custody for documents produced by the CCSF and the VA.[2] The parties stipulated to certain facts.[3] The stipulation must be marked as an exhibit and read into evidence at trial.

---

[1] Case-Mgmt. and Pretrial Order – ECF No. 108 at 3–14. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Joint Proposed Pretrial Order – ECF No. 182.

[3] Signed Stipulation – ECF No. 182-1.

**5. Motions in Limine (MILs)**

For the reasons stated on the record and below, the court rules as follows.

**5.1    Plaintiff's MILs**

**5.1.1 s Exclude Evidence About the HUD Determination**

The court excludes the HUD determination, which happened after the CCSF's decision in this case. The plaintiff complained to HUD about the CCSF's denying him a rent-paying roommate. To support his complaint, he attached his doctor's letter recommending a roommate as an accommodation to his disability. The letter did not refer to a rent-paying roommate, and HUD denied the application on that ground without prejudice to the plaintiff's bringing a civil lawsuit. The CCSF wants to use that determination to show that its decision was reasonable too. But the CCSF's decision rests on a different record than HUD's. Admitting the HUD determination confuses the issues and potentially misleads the jury. Fed. R. Evid. 403; *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999) ("an agency's determination that insufficient facts exist to continue an investigation" is "a final ruling by the agency," and there is a "great[] risk of unfair prejudice involved in introducing a final agency ruling" because "a jury might find it difficult to evaluate independently evidence of discrimination after being informed of the investigating agency's final results").

The CCSF also contends that the HUD determination shows that it was objectively reasonable for the CCSF to understand the plaintiff's accommodation request to be for a roommate and not necessarily a rent-paying roommate. But the HUD determination has minimal (if any) relevance on that point, in contrast to the risk of unfair prejudice it poses, as articulated in *Beachy*. HUD, in fact, understood the accommodation request to be for a rent-paying roommate specifically.

**5.1.2  Exclude Evidence about Plaintiff's Disputes With Property Managers and HOA**

The plaintiff moves to exclude evidence about his disputes with his homeowners' association, the HOA's attorney Glenn Youngling, and the HOA's property-management company Merit Property Management from 2009 to 2012. The disputes are arguably fair for cross-examination about the plaintiff's motive and intent for renters: he wanted to move out because his living situation was contentious, and he wanted to travel for extended periods. The disputes are arguably

relevant to the issue of whether a rent-paying roommate was necessary for purposes of the plaintiff's disability. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (the necessity element of a Fair Housing Act claim requires a "causal link between [the defendant]'s failure to accommodate and [the plaintiff]'s disability"); *Skochko v. Mercy Hous., Inc.*, No. 20-CV-08659-JSC, 2022 WL 3357836, at *8 (N.D. Cal. Aug. 15, 2022) (evidence that "reasonably disputes" that causal link is relevant).

The problem is that the interactions with the HOA are attenuated: they are from 2009 through 2012. The issue with the CCSF regarding a rent-paying roommate did not become apparent until March 2016, and the plaintiff did not move out until May 2018 (despite the past disputes).[4] Moreover, it isn't clear how the disputes would cause the plaintiff to want roommates: the CCSF's relevance argument is really that the disputes made the plaintiff want to travel and move out. But the travel requests, for example, are not the accommodation request at issue in this case. Also, some of the facts stray into Rule 404 bad-acts territory: a restraining order or an HOA disciplinary notice, for example.

In sum, the disputes have minimal relevance to the dispute with the CCSF and risk unfair prejudice and jury confusion. Fed. R. Evid. 402, 403. The court thus excludes the disputes. This ruling does not preclude the CCSF from cross-examining Mr. Rice about his reasons for wanting rent-paying roommates during the period of time he had rent-paying roommates (meaning, starting in 2009). But the CCSF may not ask about the contentious interactions with the HOA, its attorney, and its property-management company that ended in 2012.

### 5.1.3  Exclude Testimony About Amount of Rent Collected

This evidence is relevant to (1) the plaintiff's reasons for requesting a rent-paying roommate (and thus, whether a rent-paying roommate was a necessary accommodation) and (2) whether allowing a rent-paying roommate would fundamentally alter the nature of the below-market-rate program. *Cf. Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) (financial considerations relevant to rebut claim of a bona fide religious belief). The court denies the motion.

---

[4] Order – ECF No. 159 at 3, 6 (recounting chronology).

### 5.2 Defendant's MILs

#### 5.1.1 Exclude Lay Testimony re Medical Evidence, Damages, and Affordable Housing

The issue is whether the plaintiff can testify to issues that require expert testimony. He agrees that he cannot and will testify only to matters within his personal knowledge. Fed. R. Evid. 602, 701.

#### 5.2.2 Limit Expert Testimony of Scott Lines, Ph.D.

The CCSF apparently did not raise this MIL — which asks the court to exclude Dr. Lines's opinion about the plaintiff's need for a rent-paying roommate — during the parties' meet-and-confer, as the court's processes require.[5] A *Daubert* motion like this should be a full motion, not an MIL, particularly when the court has already relied on the expert in question at the summary-judgment stage.[6] That said, the CCSF's objection goes to the weight of the evidence, not its admissibility. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004). Moreover, Dr. Lines is not merely serving as a conduit for statements by the plaintiff; "rather, he used his many years of experience and training to diagnose [the plaintiff]'s mental condition." *United States v. Finley*, 301 F.3d 1000, 1008–09 (9th Cir. 2002) (a psychologist goes beyond a party's subjective statements to the psychologist where the psychologist "relie[s] on accepted psychological tests, from which he dr[aws] sound inferences, and he t[akes] a thorough patient history"). Dr. Lines may testify regarding the matters disclosed in his report.

#### 5.2.3 Exclude Testimony Regarding Draft Report of Expert William Lynch, M.D.

The plaintiff may not use the draft report to cross-examine Dr. Lynch. The court's previous order addressed this issue.[7] Fed. R. Civ. P. 26(b)(4)(B). The plaintiff may inquire into the bases of his expert opinion.

#### 5.2.4 Interactive Process and the HUD/DOJ Joint Statement

The first issue is whether the CCSF is obliged to engage in the interactive process. The plaintiff concedes that it is not and will not argue that point. But he may inquire into the bases for

---

[5] Pretrial Order – ECF No. 108 at 3–4.

[6] Summ. J. Order – ECF No. 159 at 15 & n.60 (citing Dr. Lines's opinion that "a roommate with an unequal contribution would 'exacerbate[]' the plaintiff's symptoms").

[7] Order – ECF No. 163.

the CCSF's decisions, including the processes that it followed. *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1192 (9th Cir. 2021) ("The interactions between the tenant and landlord are, of course, relevant — reasonableness and 'accommodation' cannot be determined in a vacuum." Also, "[t]he statute prohibits failing to 'make reasonable accommodations,' not failing to interactively engage.'").

The second issue is whether the court should exclude argument or testimony about the "Joint Statement of the Department of Housing and Urban Development and the Department of Justice — Reasonable Accommodations Under the Fair Housing Act," dated May 17, 2004. "This Statement provides technical assistance regarding the rights and obligations of persons with disabilities and housing providers under the Act relating to reasonable accommodations."[8] The plaintiff wants to ask whether the CCSF knew about and considered the guidance. The CCSF is concerned that if the plaintiff uses the Joint Statement as a source of "relevant factors" for evaluating the plaintiff's claims (as the plaintiff proposes[9]), then the jury will be misled into believing that the agency guidance is a legal requirement, or that an interactive process is a legal requirement. *Cf. Beachy*, 191 F.3d at 1015.

A good portion of the Statement is a summary of the law. Also, it predates *Howard*. The legal summary risks a jury's concluding that the agency guidance is a legal requirement that requires the interactive process. The reasonableness inquiry, for example, does not itself take the interactive process into account. *Giebeler*, 343 F.3d at 1157 (an accommodation is reasonable when it does not impose any (1) "fundamental alteration in the nature of the program" or (2) "undue financial or administrative burdens") (cleaned up). The court will instruct the jury on the law, and questions 1 through 5, which discuss legal standards, are excluded as duplicative at best and confusing at worst.[10]

---

[8] Joint Statement, Ex. F to Rosenblit Decl. – ECF No. 168-7 at 2–3.
[9] Opp'n to Mot. in Limine – ECF No. 173 at 13.
[10] Joint Statement, Ex. F to Rosenblit Decl. – ECF No. 168-7 at 3–7.

That said, tort cases are tried to the standard of care. The Joint Statement has information about the obligations of providers, and questions about the obligations are relevant to the dispute. It is hard to see how questioning government actors about their obligations is unfair prejudice. Relevant questions are 6, 7 (but eliminating the word "interactive" in the last line of paragraph two as confusing legally and unnecessary in a sentence that otherwise innocuously suggests that it is helpful to have a discussion), 9, and 11 through 19. The questions illustrate situations that providers may encounter, are relevant to the standard of care, and do not risk confusion on the legal standards. The court excludes sections 8 and 10: 8 treads too close to the interactive process and has only tangential relevance, and 10 is about the interactive process.[11]

The introduction is not prejudicial and clarifies that this is a Q & A document. So does the header "Questions and Answers."[12]

### 5.2.5  Punitive Damages

The CCSF is not subject to punitive damages under the Fair Housing Act. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981) (with regard to municipalities, "no punitive damages are allowed unless expressly authorized by statute"); 42 U.S.C. § 3613(c)(1) (authorizing punitive damages but not mentioning municipalities). Although some district courts have held otherwise, the cases requiring an express authorization of punitive damages against municipalities are more persuasive. *Brooks v. Seattle Hous. Auth.*, No. C 12-0878-JCC, 2013 WL 5493049, at *1–2 (W.D. Wash. Oct. 1, 2013); *Alamar Ranch, LLC v. Cnty. of Boise*, No. CV 09-04-S-BLW, 2010 WL 1727844, at *8–9 (D. Idaho Apr. 27, 2010); *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1158–59 (C.D. Cal. 2001). This is because there is a "presumption against imposition of punitive damages on governmental entities." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784–85 (2000).

---

[11] *Id.* at 7–16.

[12] *Id.* at 2–3.

### 6. Objections to Exhibits

Pursuant to the court's September 20, 2021, Case-Management and Pretrial Order, Rule 26(a)(3) objections, if any, to exhibits were due within fourteen days after the pretrial disclosures were made. The parties filed their joint exhibit list. There are too many exhibits, and the parties will work to reduce them. The limits on trial testimony will accomplish that in any event.

### 7. Jury Instructions

The court will file preliminary jury instructions and proposed final jury instructions and will hold an instructions conference on June 15, 2023, at 1 p.m. That should obviate the need to have an instructions conference during trial and before closing argument to finalize any issues about the instructions.

### 8. Verdict Form

The court will file a proposed verdict form and will finalize it either at the pretrial conference or before closing argument.

### 9. Voir Dire and Jury Questionnaire

The parties submitted a jury questionnaire. The jury office sent the questionnaire to the jury venire on Friday, June 9, 2023, and provided the responses — as discussed at the May 25 pretrial conference — in the morning of June 13, 2023. By noon on June 14, 2023 (as ordered at the May 25 pretrial conference), the parties must confer and file a joint list of jurors that they agree should be excused for cause and flagging (if they can) any disputed for-cause challenges (to be addressed during jury selection). They must attach a proposed order. At the pretrial conference on June 15, 2023, the court will address the undisputed for-cause challenges and will advise the jury office of the ruling by 2:30 p.m.

The court allows attorney voir dire. The parties asked for thirty minutes each. Voir dire does not count against the trial time.

**10. Trial**

The court's ordinary processes are as follows. By Thursday, June 15, 2023, at 3:00 p.m., counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits used in opening statements and otherwise) for the first day of trial. Thereafter, at the end of each trial day, counsel must give notice of the order of proof for the next trial day. The parties must notify the court of any issues by the end of the business day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross examination (other than for impeachment). The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiff's case).

**IT IS SO ORDERED.**

Dated: June 13, 2023

LAUREL BEELER
United States Magistrate Judge